WILLIAM B. THOMPSON v. ALD, NEW YORK, INC.

(Filed 20 September, 1961.)

**1. Contracts § 12—**

The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.

**2. Master and Servant § 10—**

Where an employee without prior notice to the employer decides to go into business for himself, ceases to engage in the activities of the employment and engages in activities relating solely to his personal business venture, the acts of the employee constitute an abandonment of his employment contract, and the employer, upon being advised of the facts, is entitled to treat the contract of employment as having been terminated by the employee.

**3. Master and Servant § 9—**

Where a sales agent, employed on salary and commissions to sell equipment for a particular business, decides to go into the business himself, ceases his activities pursuant to the employment and engages solely in activities to set up his personal business, and thereafter purchases the equipment for the business from the employer, the employee is not entitled to commission on the equipment sold to himslf, since commissions on such sale is not contemplated in the contract of employment and the employee had terminated and abandoned the employment prior to the purchase of the equipment.

**4. Principal and Agent § 4—**

A statement of an agent constituting an admission against the interest of the principal is not competent against the principal until the authority of the agent to bind the principal in regard to the matter is shown.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Bone, J.,* February, 1961, Term, of BEAUFORT.

Plaintiff alleges that, as salesman for defendant, he sold *to himself* at the price of $18,716.85 certain automatic Laundromat equipment; that he is entitled to a commission of 5% on said sale price, *alleged to be* $925.93; and that he is entitled to recover from defendant the sum of $773.61, to wit, $925.93 less $152.32 theretofore paid by defendant to plaintiff as salary.

The only evidence was that offered by plaintiff. It tends to establish the facts narrated below.

Prior to Monday, October 5, 1959, plaintiff was engaged in business in Washington, N. C., as an insurance agent. On that date, in accordance with the terms of a written contract, plaintiff was employed

by defendant to sell Westinghouse automatic Laundromat equipment. He was *to be assigned* a territory in eastern North Carolina.

The employment contract, in the form of a letter from defendant's Chicago office, was executed in behalf of defendant by A. A. McCarley, "Vice President of Sales." It was signed by plaintiff on October 5, 1959. After signing the contract, plaintiff, on October 5th, went to Raleigh, N. C., and reported to Mr. Gerald DeBoer, defendant's North Carolina Sales Manager. Plaintiff spent that week in Raleigh, working out of the Raleigh office with DeBoer and another salesman, "just learning the general conditions of the business, did not make any sales, did not try to, just picked up ideas." He went to his home in Washington on Saturday, October 10th. On Sunday, October 11th, he went back to Raleigh and there "caught a plane to New York, reported to a training school at Jamaica, New York and studied at the training school for five days." The school was conducted by defendant. Mr. Dan Fitzgerald, defendant's Eastern Division Training Manager, was the instructor. Plaintiff finished his training course and returned to his home in Washington on Saturday, October 17th.

Plaintiff's expenses while attending defendant's training school, including transportation, were paid by defendant.

Plaintiff testified: "In the course of my instruction at my employer's training school I gave thought to the possible purchase of a Laundromat and different equipment." Again: "When I got home after attending the school I was completely sold on this type of business and wanted to get into it."

On Sunday, October 18th, plaintiff and his wife rode to Williamston, N. C., some twenty miles from Washington, "looking around for empty buildings." On Monday, October 19th, at Williamston, plaintiff located an "ideal building, located in a good spot, had parking space." He contacted the owner. On Tuesday, October 20th, plaintiff got "a five-year lease and a five-year option to renew the lease on that building."

After obtaining the lease, plaintiff telephoned DeBoer. Plaintiff testified: "I told him (DeBoer) I had found a location, had signed a lease and was ready to sell myself a store or the equipment to go in a Laundromat store." As a result of that conversation, DeBoer met plaintiff in Williamston on Thursday, October 22nd, at 11:00 p.m. Plaintiff testified: "He and I went over the details of the equipment I would need or wanted to buy." Again: "It was about 11:30 at night, the 22nd of October, when I finally agreed on what I wanted and signed the sales agreement covering it."

The sales agreement lists defendant as Seller, plaintiff as Buyer, and P. McElheney as Salesman. McElheney was with DeBoer and

plaintiff when the sales agreement was signed. Plaintiff testified: "I talked to him (McElheney) several hours before Mr. DeBoer arrived."

When the sales agreement was written, plaintiff stated it was his opinion he had made the sale and was entitled to the commission.

Plaintiff testified: "I recall asking Mr. DeBoer why Mr. McElheney's name appears on the sales agreement rather than mine. He told me I was not entitled to the commission on the sale, that Mr. McElheney was, that is why he put his name on the sales agreement." Again: "He (DeBoer) said no I was not entitled to the commission. I did not let that hold up making the purchase. I wanted to go into the business. I signed the agreement."

When the sales agreement was signed, plaintiff handed DeBoer a check payable to defendant for $1,000.00 as a deposit. On the 23rd and 24th of October, plaintiff made arrangement with his bank in Washington and mailed to ALD, Baltimore, a letter guaranteeing payment on sight draft in the amount of $17,716.85. Plaintiff testified: "I paid ALD, Inc. in full for the equipment. I did not deduct any commission when I made the payment."

The first piece of equipment, a small item, was delivered to plaintiff on or about November 5th. The rest of it was delivered on or before December 24th.

The employment contract provided for the payment of a base salary and expenses. If earned commission (5%) in any month exceeded plaintiff's base salary, defendant was to pay plaintiff the amount of such excess.

Two checks, representing salary less deductions for social security and withholding, were issued by defendant to plaintiff and cashed by plaintiff, one for $69.24 and the other for $83.08. The second check was written October 19th and mailed to plaintiff from New York. Plaintiff did not recall whether he received it before or after he signed (October 22nd) the sales agreement. As indicated above, plaintiff proposes to credit the amount of these checks ($152.32) against the commission of $925.93 he alleges defendant owes him.

At the conclusion of plaintiff's evidence, the court, on defendant's motion, entered judgment of involuntary nonsuit. Plaintiff excepted and appealed.

*Rodman & Rodman for plaintiff, appellant.*
*Bryan Grimes for defendant, appellee.*

BOBBITT, J.   Plaintiff signed the sales agreement, designating plaintiff as Buyer and P. McElheney as Salesman, after he had been advised positively by DeBoer that he (plaintiff) was not entitled to the com-

mission. Thereafter, plaintiff received the equipment and paid the full purchase price therefor. Whether these facts, if they had been properly pleaded, would be sufficient to estop plaintiff from asserting a claim for commission, need not be decided or discussed.

The basic question is whether, independent of estoppel, plaintiff was entitled to a commission on the sale price of the equipment he purchased from defendant.

"The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Stacy, C.J.,* in *Electric Co. v. Insurance Co.,* 229 N.C. 518, 520, 50 S.E. 2d 295; *DeBruhl v. Highway Commission,* 245 N.C. 139, 145, 95 S.E. 2d 553, and cases cited. The sufficiency of plaintiff's evidence is to be tested in the light of this well-settled legal principle.

Clearly, when they entered into the contract of October 5th, both plaintiff and defendant contemplated and intended that plaintiff was employed, as a salesman, to sell equipment to third parties. It was not contemplated or intended that plaintiff would go into the automatic Laundromat business and purchase equipment from defendant incident to the establishment thereof. Indeed, the contract of October 5th provides: "For so long as his employment may continue, no sales representative or person in the employ of ALD, Inc., or ALD New York, Inc. may own or have any interest in an automatic laundry store nor may he own nor have any interest in any laundry equipmet, coin metered or otherwise, which may be made available for use of customers in private or public housing of whatever type."

Plaintiff did not make or attempt to make a sale of automatic Laundromat equipment to any third party during the two weeks he acted under defendant's instructions. The training he received at defendant's expense during this period was to prepare him to do so. But, when he returned from New York on Saturday, October 17th, plaintiff was "completely sold" on the automatic Laundromat business and "wanted to get into it." Having made this decision, plaintiff acted promptly. By Tuesday, October 20th, he had leased the building in Williamston. Thereupon, he notified DeBoer of his decision to go into the automatic Laundromat business and that he had obtained the lease. On Thursday, October 22nd, in Williamston, plaintiff purchased the equipment from defendant in accordance with the sales agreement.

Plaintiff testified he received no notice from defendant with reference to the termination of his contract. But plaintiff, without prior notice to defendant, made his decision to enter the automatic Laundromat business; and from Sunday, October 18th, plaintiff was engaged in

activities relating solely to his personal business venture. In our view, plaintiff's said decision and activities were wholly inconsistent with the purpose for which he was employed and constituted an abandonment by him of his employment contract; and, when advised of plaintiff's said decision and activities, defendant was fully justified in treating the contract as having been terminated by plaintiff. "An employee who refuses to serve or voluntary abandons his employer's service, terminates the employment, or, at least, the employer is authorized to rescind the contract and refuse longer to be bound by it." 56 C.J.S., Master and Servant § 40.

Having so terminated his contract of employment, plaintiff had no right to commission on account of any sale thereafter made; and on October 22nd, when the sales agreement was executed, plaintiff's true status was that of purchaser from defendant rather than salesman for defendant.

Plaintiff offered a letter dated October 29, 1959, from plaintiff to Mr. Dan Fitzgerald, containing, *inter alia,* this statement: "About the fourth day of this school, I asked you if I sold myself a store would I get the commission on the sale. Your exact reply was, 'Yes Sir, you sure do.'" The evidence fails to show any authority on the part of Fitzgerald, defendant's Eastern Division Training Manager, to enter into any agreement on behalf of defendant in relation to plaintiff's contract of employment. If the remark attributed to Fitzgerald is considered an expression of a legal opinion, such opinion is not in accord with the views of this Court.

Being of opinion (1) that the contract did not contemplate the payment of a commission by defendant to plaintiff on a purchase of equipment by plaintiff from defendant incident to plaintiff's withdrawal from defendant's employment and his establishment of an automatic Laundromat business, and (2) that the decision and activities of plaintiff constituted an abandonment and termination by plaintiff of his employment contract prior to his negotiations with DeBoer and his purchase of equipment from defendant, the judgment of involuntary nonsuit is affirmed.

Affirmed.

RODMAN, J., took no part in the consideration or decision of this case.