CITY OF CHARLOTTE v. M. LEE HEATH, D. MORGAN HEATH, WIL-
LIAM H. LIVIE AND WIFE, EDNA R. LIVIE, AND JAMES J. COOK,
INDIVIDUALLY, AND JAMES J. COOK, TRUSTEE.

(Filed 27 November, 1946.)

**1. Eminent Domain § 1—**

The choice of a route is primarily within the discretion of the authority
exercising the power of eminent domain, and will not be reviewed on the
ground that another route may have been more appropriately chosen
unless it appears that there has been an abuse of discretion.

**2. Eminent Domain § 4—**

Private property can be taken under eminent domain only for a public
purpose and upon payment of a just compensation.

**3. Same—**

What is a public purpose is a question of law for the court, and where
the application of this principle requires an ascertainment of fact,
whether by court or jury, when the facts are determined the issue no
longer rests in fact but in law.

**4. Same: Appeal and Error §§ 37, 40d—**

A conclusion upon undisputed evidence that the purpose for which a
municipality sought to exercise the power of eminent domain was not for
a public purpose, is a conclusion of law which is reviewable notwithstand-
ing that the judgment of the lower court denominates it a finding of fact.

**5. Eminent Domain § 4—**

If a purpose is a public purpose its nature is not affected by the fact
that the number of persons to be served may be small.

**6. Same—**

The taking of a right-of-way for a sewer line to serve property adjacent
to the municipality, which line lies partly outside the city, but which is
to be connected with the municipal sewer system, and become the prop-
erty of the municipality and subject to its exclusive control (Public-Local
Laws of 1939, chapter 366, section 65) is for a public purpose, the service
being available to the general public residing in, or who may seek resi-
dence in the area.

**7. Municipal Corporations § 8: Eminent Domain § 6—**

The City of Charlotte is given authority by its charter to extend its
public services, including that of water and sewerage, to those living
beyond the city limits, and to acquire the facilities used for said purposes,
including pipe lines, Public-Local Laws of 1939, chapter 366, section 65,
and this right being existent, the city has the right of condemnation for
said purposes. G. S., 160-204; G. S., 160-205.

**8. Municipal Corporations § 5—**

Municipalities are altogether creatures of the Legislature and the
General Assembly has the power to confer on a municipality authority to
extend to the public, beyond its own territorial limits, services similar to
those enjoyed by its own inhabitants, such as lights, water and sewerage.

BARNHILL and WINBORNE, JJ., dissent.

APPEAL by plaintiff from *Olive, Special Judge,* at 13 May, 1946. Extra Civil Term, of MECKLENBURG.

The residents of a considerable area on the watershed in the immediate vicinity of the corporate limits of the City of Charlotte, at the time consisting of 65 or 70 persons, had been using a common septic tank, which, as the population increased, proved insufficient for its purpose, overflowed and became so offensive and such a menace to the health of those inhabiting the city and its environs that the county health authorities demanded removal of the condition as dangerous to the public health. Finding that the condition could not be satisfactorily remedied otherwise, these persons made an agreement with the City of Charlotte in accordance with its Charter provisions whereby they undertook to install an addition to the sewerage system of the city and connect the same with the outfall of the city sewerage plant, the addition thereupon to become the property of the city and to be operated by it as other such facilities, City Charter, Public-Local Laws of 1939, chapter 366, sec. 65.

In their efforts to carry out the project they negotiated with the defendants, M. Lee Heath and D. Morgan Heath, for the purchase of a right-of-way over certain intervening land, partly within and partly without the city limits, which the Heaths were supposed to own. They were unable to purchase the right, although they were offered two lots upon which such a right-of-way might be constructed at the price of $1,500.00, which they declined to pay.

Thereupon, after a proper survey, they caused the sewerage line to run across other lots, including a portion of the area marked on the map as "Space Reserved"—(which appears thereon to be dedicated as a street) —and a portion of another lot (No. 34 on the map) not owned by the defendants Heath but as to which they now claim an adverse interest because of certain restrictive provisions in the deeds constituting the chain of title thereto that the property should be used for residential purposes only.

When the sewerage line had been partially completed the defendants Heath brought an injunction proceeding against the promoters, asserting the alleged restrictions as repugnant to the use intended and asking that the defendants therein be perpetually enjoined from interference therewith.

Upon a hearing of that matter before Hamilton, J., 3 February, 1944, the restraining order was dissolved on the ground that the plaintiff had no interest in the lands, and the plaintiff in that proceeding took a nonsuit. The sewerage system was then completed and connected to the main sewerage system of the city, at least to the outfall thereof, within

the "Space Reserved." Some time afterwards the defendants, M. Lee Heath and D. Morgan Heath, claiming to have purchased the area so designated,—"Space Reserved,"—for $100.00,—(as plaintiff contends with the knowledge of the foregoing facts)—brought an action of trespass against Cooper and others who had caused the sewerage line to be built as aforesaid, demanding a removal of the same. To this action the City of Charlotte, then operating the new line, was not made a party.

Shortly thereafter the City of Charlotte brought this proceeding against the defendants Heath and other defendants herein, not now appealing, asking to condemn a right-of-way for the sewer line already in operation, through the lands claimed by the Heaths and those in which they claimed adverse restrictive interests, for the purpose of serving those accessible to it, both within and without the city limits, with sewerage facilities.

The right-of-way sought lies partly within and partly without the city limits as designated on the accompanying map. The "sanitary sewer" lines referred to are existing, *in situ,* and operating. Reference to the "new" sewer line is the sewer along the right-of-way sought to be condemned. The proposed right-of-way does not encroach on lot 35 owned by the defendants Heath but does cross for a distance of 35.5′ the "Reserved Space" in which they claim an interest, by purchase since the sewer was completed and in operation. The 12″ sewer line crossing this "Space Reserved" is part of the city system which has been in operation for many years. The appealing defendants claim an enforceable adverse interest in lot 34 by reason of the above mentioned restrictions in *mesne* conveyances that it shall be used only for residential purpose. The lot was originally owned by the Heaths and the restriction occurs in their deed.

The matter was once heard by the Clerk, appealed from him to the Superior Court of Mecklenburg, thence remanded to the Clerk for further hearing, with a favorable result to the plaintiff, and upon appeal again reached the Superior Court for final hearing. Upon such hearing by Olive, J., judgment was entered against the plaintiff, in which judgment the following occurs:

"The Court being of the opinion that upon all the evidence, and taking all the evidence as being true, the purpose for which the said defendant Heaths' property is sought to be condemned in this action is a private use and not a public use; the Court finding as a fact that the property is sought to be condemned for the private use and convenience of the owners of seventeen residences, all of which are located without the City of Charlotte.

"The Court finds as a matter of law, upon the facts found as aforesaid, that the plaintiff is without power and authority to condemn the

CHARLOTTE *v.* HEATH.

property of the defendants, M. Lee Heath and D. Morgan Heath, in this action."

The petition was denied and the action dismissed and the plaintiff taxed with the costs. From this judgment plaintiff appealed.

Where it is necessary to refer to statutes, case history, or evidence particularly bearing upon the decision and not above set out, such matter will be embodied in the opinion.

*John D. Shaw, Goebel Porter, and Frank H. Kennedy for plaintiff, appellant.*

*C. D. Taliaferro and J. M. Scarborough for defendants, appellees.*

SEAWELL, J. Preliminarily to the statement of the question, we observe that the choice of a route in a condemnation proceeding is primarily within the political discretion of the grantee of the power and will not be reviewed on the ground that another route may have been more appropriately chosen unless it appears that there has been an abuse of the discretion. *Power Co. v. Wissler,* 160 N. C., 269, 76 S. E., 267; *Selma v. Nobles,* 183 N. C., 322, 325, 111 S. E., 543.

In the exercise of the right of eminent domain, private property can be taken only for a public purpose and upon just compensation. *Long v. Rockingham,* 187 N. C., 199; *McRae v. Fayetteville,* 198 N. C., 51, 150 S. E., 810.

But in any proceeding for condemnation under the power of eminent domain, what is a public purpose, or, more properly speaking, a public use, is one for the court. *Deese v. Lumberton,* 211 N. C., 31, 188 S. E., 857; *Yarborough v. Park Commission,* 196 N. C., 284, 145 S. E., 563; *Highway Commission v. Young,* 200 N. C., 603, 607, 158 S. E., 91; McQuillin, Municipal Corporations, sec. 1600, p. 517; 29 C. J. S., pp. 820, 821. Where the particular application of this principle requires an ascertainment of fact, whether by court or jury, when the facts are determined the issue no longer rests in fact but in law.

In the case at bar the facts essential to judicial determination are not disputed. The judge, taking the whole evidence to be true, absolved all parties from bad faith, but found as a fact and repeated as a conclusion of law that the condemnation was sought for a private purpose; for the sole benefit of a group of home owners, indefinitely described, living outside the city limits. Either it is assumed that this group was not large enough to constitute a community, or to be credited with the necessity of a public use; or that the municipality was without power to exercise the right of eminent domain otherwise than for the exclusive benefit of its own inhabitants. The oral argument and discussion in the opposing briefs follow that pattern; and, disregarding matters not essential to disposition of the appeal, we may state the question before us in substantially the same form: (a) Whether the intended use of the right-of-way sought is public or private; and (b) Whether the City of Charlotte may, either under its Charter or the general public laws, extend its sewerage facilities to nonresidents living in the environment of the city

.and acquire by condemnation a right-of-way for that purpose: or, con-versely stated, whether condemnation may be made only for the exclusive benefit of those living within the city limits.

1. The first question must be answered in the affirmative. The label of fact put upon a conclusion of law will not defeat appellate review.

We will not attempt to give any definition of what is a public purpose or a public use applicable to all situations. Perhaps none can be devised which is not challengeable, since, with the progressive demands of society and changing concepts of governmental function, new subjects are con-stantly brought within the authority of eminent domain. The matter with which we are dealing does not carry us that far.

Perhaps the simplest definition is found in 18 Am. Jur., page 666, sec. 38 (2), originally devised by Judge Cooley in practically the same form: "Takings, either by a municipal or a private corporation, for the purpose of enabling such corporation to furnish the public with some necessity or convenience which cannot readily be furnished without the aid of some governmental power, and which is required by the public as such, when the public has a legal right to make use of such necessity and convenience."

If there was in the record any evidence to sustain the theory that the use of the sewer line was intended to be confined, or could be confined in the future, to the 65 or 70 persons presently dwelling in the area to be served, and was not now, nor could hereafter be accessible to the general public who seek residence there, the case might be different. But there is no such evidence, and the inferences are to the contrary.

The public nature of the project cannot be made to depend on a numerical count of those to be served or the smallness or largeness of a community.

Quoting again from 18 Am. Jur., "Eminent Domain," sec. 40: "Simi-larly in those states in which use by the public is the test, the mere number of people who use or can use the property taken are not determi-native of whether it constitutes a public use or not. It may suffice if very few have or may ever have occasion to use it." See also C. J. S., "Eminent Domain," page 827, sec. 31 (b).

"The use which will justify the taking of private property under the exercise of the right of eminent domain is the use by or for the govern-ment, the general public, or some portion thereof as such, and not the use by or for particular individuals or for the benefit of particular estates. The use, however, may be limited to the inhabitants of a small locality, but the benefit must be in common." "It is not essential that the entire community nor even any considerable portion should directly enjoy or participate in an improvement in order to constitute a 'public use.'" *Rindge Co. v. Los Angeles County,* 262 U. S., 700, 67 Law Ed.,

1186. "The public use required need not be the use or benefit of the whole public or state or any large portion of it. It may be for the inhabitants of a small or restricted locality; but the use and benefit must be in common, not to particular individuals or estates." *Miller v. Pulaski*, 109 Va., 137, 63 S. E., 880, 883; McQuillin, Municipal Corporations, sec. 1600, page 521; Lewis, Eminent Domain, 3rd Ed., sec. 258. We are satisfied that the use to which it is proposed to put the land condemned is within these definitions.

The evidence developed nothing in common between the members of this community except the urgent communal necessity of a less offensive and more sanitary method of disposing of the sewage, and a co-operative effort to put the situation under the complete control of the city authorities. In so doing they only complied with the requirements of the City Charter, and the contribution made by members of the community to the original installation did not deprive the project of its public character. *Stratford v. City of Greensboro*, 124 N. C., 127, 32 S. E., 394. When the line was complete and connected with the city sewerage system it became the property of the City of Charlotte by virtue of the statute, sec. 65, Charter of City of Charlotte, *supra*, and they became nothing more than individually paying customers under city regulation applicable alike to the general public, and were without any vestige of further control.

Condemnation was, therefore, not as charged by defense, a mere device to put the project in control of those who had neither the power to condemn nor the right to exercise the franchise.

2. The Charter of the City of Charlotte, cited *supra*, expressly provides for the extension of its public services, including that of water and sewerage, to those living beyond the city limits and for the acquisition of the facilities, including pipe lines used for said purpose. Where that right exists a condemnation may be made under the City Charter or under the General Statute relating to the power of municipalities. G. S., 160-204, 205. The cited sections expressly confer the power of extra-territorial condemnation where the municipality has the right to acquire the property.

The power of the Legislature to confer on a municipality the authority to extend to the public, beyond its own territorial limits, services similar to those enjoyed by its own inhabitants, such as light, water, sewerage, is well established. *Holmes v. Fayetteville*, 197 N. C., 740, 150 S. E., 624; McQuillin on Municipal Corporations, sec. 1945. See citations, page 81, Vol. 5. Nothing that is said in *Williamson v. High Point*, 213 N. C., 96, 195 S. E., 90, is in conflict with this authority, which is now exercised by the cited municipality and many others in the State of North Carolina. The case is easily distinguishable. There, the

municipality sought to finance its project under the 1935 Bond Revenue Act, which act limited municipalities proceeding thereunder to projects undertaken exclusively for the benefit of the inhabitants of the city, a limitation which the Court enforced. This and related cases must be considered within the frame of the facts presented and the applicable law determinative of that controversy.

Municipalities are almost altogether creatures of the Legislature rather than of the Constitution; and the Constitution imposes upon them no restrictions in this respect. If there could be any question of policy involved it is determined by the fact of numerous legislative grants of authority. Not only does a city expand its limits from the increasingly populous territory surrounding it, but it cannot afford to be indifferent to the problems produced by the congestion on its borders, the solution of which is often a matter of common interest to those living within the city and those immediately without. This condition is recognized in practically all jurisdictions, including our own. On the criminal side, municipalities have been allowed extra-territorial police power. Economically, they are protected by extra-territorial taxing regulations. As a matter of welfare they have often been given extra-territorial jurisdiction; and, as in the present situation, they have been permitted extension of sewerage facilities. The town line means nothing to the breezes which blow across the city carrying malodorous exhalations, or to the minute wings laden with the germs of disease and death.

The statute operating *ex proprio vigore* needs no argument to support it. If any were needed it might be found in the recognition of the truth that a city cannot, any more than an individual, live unto itself alone.

It is the opinion of the Court that the City of Charlotte, under the facts of this case and applicable law, has the right to exercise its power of eminent domain to condemn the lands and property rights described in the petition for the proposed use.

The judgment of the court below is reversed and the cause is remanded to the Superior Court of Mecklenburg County for judgment and further proceeding in accordance with this opinion.

Reversed and remanded.

BARNHILL and WINBORNE, JJ., dissent.