ARTHUR M. DeBRUHL AND WIFE, JANIE W. DeBRUHL, Petitioners, v. STATE HIGHWAY & PUBLIC WORKS COMMISSION, Respondent.

(Filed 12 December, 1956.)

1. **Evidence § 25: Trial § 5½—**

Where a pretrial order fixes the issue to be submitted to the jury, such issue becomes the theory upon which the case must be tried, and evidence irrelevant to such issue is incompetent.

2. **Eminent Domain § 18c—**

Where, in condemnation proceedings, a pretrial order establishes that petitioner is entitled to recover compensation only for the value of the land taken excluding the value of a house thereon, evidence as to the value of the house is not germane, and when voluminous testimony as to the value of the house is admitted and it is apparent that such testimony affected the verdict, the admission of such testimony must be held prejudicial notwithstanding an instruction to the jury that it should not consider the testimony as to the value of the house.

3. **Appeal and Error § 41—**

Where voluminous evidence as to an item of damages not recoverable upon the issue upon which the case was tried is admitted and it is obvious from the verdict that the jury considered such incompetent testimony in fixing the amount of damages, the admission of such testimony must be held prejudicial notwithstanding an instruction to the jury that they should not consider evidence as to such item of damages.

4. **Appeal and Error § 2—**

Where a new trial is awarded on respondent's appeal for error in the admission of evidence as to an item of damage not recoverable upon the theory upon which the case was tried, but petitioners maintain that the theory of trial erroneously excluded certain items of damage, which contention could not be presented on respondent's appeal from the verdict in favor of petitioners, the Supreme Court may nevertheless determine the basic question in order to avoid protraction of the litigation.

5. **Contracts § 8—**

The legal effect of the language in a written instrument is a question of law to be determined by the court.

DeBruhl v. Highway Commission.

**6. Same—**

In construing a written instrument, the court must seek to ascertain from the language used, the subject matter, the end in view and the purpose sought to be accomplished, the intention of the parties at the time the document was executed.

**7. Same—**

All instruments should receive a sensible and reasonable construction and not one which will lead to absurd consequences or unjust results.

**8. Highways § 8b—**

The State Highway and Public Works Commission was created for the purpose of constructing and maintaining the State highways, and all other powers it possesses are incidental to the purpose of its creation. G.S. 136-18. Therefore, in acquiring a right of way it has no power to acquire title to any building or part of a building not within the boundaries of the right of way sought, no more by deed than by condemnation.

**9. Eminent Domain § 9—Right-of-way agreement held not to give Commission title to residence but gave owners right to remove that part lying within the right of way acquired.**

The owner of land executed an option to the State Highway and Public Works Commission which stated that it included the purchase price of a residence and any and all other improvements on the right of way sought, less their salvage value, with provision that a stipulated amount should be paid upon delivery of the right-of-way agreement and the balance paid when the dwelling was removed from the right of way. The right-of-way agreement and release later executed provided that the owners agreed to remove the dwelling, in lieu of salvage materials, by a stipulated time or the same should become the property of the Commission. Only a small part of the dwelling was within the boundaries of the right of way then sought. Later the Commission, in making improvements, condemned the rest of petitioners' land. *Held:* The Commission did not acquire title to the residence under the right-of-way agreement, but gave petitioners the right to remove that portion thereof which was within the right of way then sought, and upon the later condemnation of the rest of the tract, the petitioners are entitled to have the value of the residence considered upon the question of the amount of compensation.

Johnson, J., not sitting.

Bobbitt, J., took no part in the consideration or decision of this case.

Appeal by defendant from *Froneberger, J.*, March Term 1956 of Buncombe.

This is a condemnation proceeding authorized by G.S. 136-19.

Prior to December 1948 plaintiffs were the owners of a lot on the south side of Druid Drive in Asheville. The lot was fifty feet in width and approximately 148 feet deep. Situate on the lot was a brick residence occupied by plaintiffs. For the purpose of relocating and improving Highways 19 and 23, the Highway Commission, in 1948, took an

option from plaintiffs for a portion of their property. The option was exercised in January 1949. This acquisition was in connection with Highway Project 9075.

In 1952 the Highway Commission, deeming further improvements to Highways 19 and 23 advisable, set up Project 9086 for that purpose. To consummate the Commission's purpose, it was necessary to acquire all of plaintiff's remaining property rights. The Commission, on 7 May 1952, gave notice that it had appropriated plaintiffs' property. Plaintiffs, in due time, instituted this proceeding, alleging ownership of the lot with the building thereon, subject to the easement acquired by defendant in 1949. Defendant answered, admitting that plaintiffs were the owners of the land taken by it. It denied, however, that plaintiffs were the owners of the building or any part of the building, asserting that it owned the building by virtue of the purchase made in 1949. Commissioners were appointed for the purpose of ascertaining compensation to which plaintiffs were entitled. The commissioners held hearings and made reports stating separately the value of the building and the value of the land. Plaintiffs and defendant each filed exceptions to the reports. The clerk overruled the exceptions and entered judgment confirming the reports. From this judgment the parties appealed to the Superior Court.

The issue to be submitted to the jury was fixed at a pretrial hearing in October 1954. Plaintiffs excepted to the order fixing the issue and appealed. The appeal was dismissed as premature but without prejudice to the rights of plaintiffs. See 241 N.C. 616, 86 S.E. 2d 200.

Judge Froneberger held a pretrial conference. He concluded the issue settled in 1954 was correct.

The cause was submitted to the jury on the issue fixed at the pretrial hearing; viz.: "What amount are petitioners entitled to recover of respondent for the land, excluding the house thereon, condemned for highway purposes on the 7th day of May 1952?" The jury assessed the damages at $12,500. Judgment was entered on the verdict. Defendant excepted and appealed. Additional facts necessary to a determination of the appeal will be set out in the opinion.

*Sanford W. Brown for petitioner appellees.*

*R. Brookes Peters and McLean, Gudger, Elmore & Martin for respondent appellant.*

RODMAN, J. The basic question in this case is: What is the property for which compensation is to be paid? At the pretrial conference in October 1954 the court concluded that compensation was to be paid for the land taken, excluding any house thereon. The order fixing the issue to be submitted to the jury became the theory on which the case was to

be tried. So long as that remained the pattern on which the case was to be tried, the evidence should be confined to the value of the land. Evidence tending to show the value of the house was not germane and hence was not competent. *Godfrey v. Power Co.*, 190 N.C. 24, 128 S.E. 485; *Connor v. Mfg. Co.*, 197 N.C. 66, 147 S.E. 672; *Shepherd v. Lumber Co.*, 166 N.C. 130, 81 S.E. 1064; *Moore v. Horne*, 153 N.C. 413, 69 S.E. 409; *Sprinkle v. Ponder*, 233 N.C. 312, 64 S.E. 2d 171. Where it is apparent that the incompetent evidence affected the verdict of the jury, the admission of such evidence is prejudicial error. *S. v. Page*, 215 N.C. 333, 1 S.E. 2d 887; *Deming v. Gainey*, 95 N.C. 528.

Plaintiffs consistently assert that the theory on which the case was tried is not correct and unduly circumscribes their right to compensation. To protect and preserve their rights they offered evidence as to the value of the land and the house. This evidence was extensive. The evidence so offered was admitted over objection by the defendant. The evidence and statement of contentions with respect thereto in the charge of the court form the basis of more than 200 exceptions. While many of these exceptions may be lacking in substantial merit, enough remain to make it appear that the verdict was affected by the incompetent evidence.

Arthur DeBruhl was permitted, over objection, to testify to the size of his house, its width and depth, the direction it faced, its location with respect to the northern line of the right of way acquired in 1949, that this line passed some two feet north of the southeast corner of his home and six feet north of the southwest corner. He exhibited a map which showed the lot and house thereon with the north right-of-way line indicated by a red line. He testified the house had seven rooms, describing the size of each room, the kind of flooring to be found in each room, the kind and number of bath fixtures and where located, the type of water heater, the kind of electric range and other electric fixtures with which the house was equipped, the kind of walls and kind of paint used on the different walls, the kind of furnace used to heat the house, the number of rooms on the second floor, with a description of the stairway leading to the second floor, the kind of roof, the size of the basement, the size and kind of porches, and the tapestry brick used to veneer the house. For the purpose of illustrating his testimony he offered photographs and a floor diagram of the house. He was asked his opinion of the fair market value of the land on 7 May 1952. He replied: "It was $200.00 a front foot." It is not disputed that the lot has a frontage of fifty feet. Hence, applying plaintiff's value to the land, the jury should have answered the issue $10,000. Immediately after plaintiff fixed the value of the land alone he was asked: "What was the value in dollars of the entire property?" He replied: "$22,800.00."

Four other witnesses were used by plaintiffs to establish their claim for compensation. None were called upon to express an opinion as to the value of the land without the house.

Witness McKinney was asked his opinion of "the fair, reasonable market value of the DeBruhl property north of the red line on Druid Drive, on May 7, 1952." He replied: "From $14,000 to $15,000. After the end of that building was taken off." Witness Whitaker, responding to a similar question, fixed the value at $17,500. Witness Riddle fixed the value at $15,500, and Mrs. DeBruhl placed the value at $22,800.

The jury fixed the value of the land without the house at $12,500. We are unable to find any evidence in the record to support the verdict. There is plenary evidence in the record to support the verdict if compensation is to be paid for that portion of the house beyond the north line of the right of way acquired by defendant in 1949. That the evidence with respect to the house, detailed and minute as it was, affected the verdict is too apparent to admit of debate, and this is so notwithstanding the express instruction given the jury at the request of defendant. "You will not consider any evidence in this case concerning any house that may have been located upon the lands appropriated by the respondent for highway purposes."

Counsel for appellees, with commendable frankness, says: "If respondent did own the remainder of the dwelling or had paid for damages to it, it is obvious that error was committed in permitting testimony as to the value of the remainder of the dwelling."

To remand the case for a new trial without more would leave the basic question stated in the beginning of the opinion unsettled and would, we apprehend, result in protracted litigation which may be avoided if that question is now answered. Normally questions not determinative of the appeal are not decided, but in this instance we feel justified in answering the question essential to a correct solution of this case. We have the benefit of the briefs filed at the Spring Term 1955 which are directed at that identical question.

The parties are in agreement that the question does not involve any issue of fact. The answer is to be found upon a construction of the written instruments executed in 1948 and 1949 in connection with the construction of Project 9075 and is a question of law to be determined by the court. *Brown v. Hodges*, 232 N.C. 537, 61 S.E. 2d 603.

On 2 December 1948 plaintiffs gave to defendant an option to purchase a specifically described right of way for highway purposes. Following the description fixing the boundaries of the right of way, the option provides: "*This option also includes the purchase price of a 1½ story brick veneer residence and any and all other improvements on said right of way*, less their salvage value. The property owners reserve the right herein to occupy said residence for a period of 12 months

from date of this option and shall have the right during said 12 months period of time to remove the dwelling and other improvements from the right of way, which operation shall be at the expense of the property owners in lieu of the salvage materials therein. Failure to remove the said residence and/or improvements within the time allotted, they shall become the property of the State Highway & Public Works Commission and shall therefore be disposed of at the option of the Commission." (Emphasis added.) Then follow provisions fixing the time within which the option may be exercised and the amount to be paid if the option is exercised. Following these provisions is a paragraph: "And it is further understood and agreed that the consideration herein stipulated to be paid shall be paid and *received in full payment of the purchase price of said right of way and in full compensation for all damages,* if any, result from the granting of this option and of this right of way, and the construction of said streets, roads and/or sidewalks upon said right of way across said lands." (Emphasis added.) Then follows: "Note: It is understood and agreed by all parties hereto that $4,200 shall be paid upon delivery of a duly executed right of way agreement to the Commission, *and the balance of $500.00 shall be paid when dwelling has been removed from the right of way.*" (Emphasis added.)

Defendant exercised its option to purchase, and on 21 January 1949 plaintiffs executed a "Right of Way Agreement," conveying the right of way and the rights called for in conformity with the option. On the same day plaintiffs executed a "Release of Claim for Right of Way and Damage." This release, after reciting payment of $4,200 for the damages sustained for the relocation of the highway, provides: "We further agree herein to remove brick dwelling from aforesaid right of way on or before December 2, 1949, at our expense in lieu of the salvage materials therein, or the same shall become the property of the State Highway Commission and shall therefore be disposed of at the option of the State Highway Commission without further obligation to we, the undersigned.

"Right of way appropriation and purchase price of
　　brick dwelling ............................................ .................. . . $4,700
"Less amount held until building is moved...... . .....　　500
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　————
　　　　"Partial Payment.................................. ...... 4,200"

Plaintiffs contend that the defendants purchased and paid for and hence acquired only that portion of the building within the right of way. Defendant, on the other hand, asserts it paid for and acquired both the portion within and outside of the right of way.

Courts, in construing written instruments, seek to ascertain the intention of the parties at the time the document was executed. "The

heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *Electric Co. v. Insurance Co.,* 229 N.C. 518, 50 S.E. 2d 295.

"An elementary rule invoked in the construction of contracts requires the court to ascertain the intention of the parties, and to do this note must be taken of the purpose to be accomplished, the situation of the parties when they made, and the subject-matter of the contract." *U. S. v. D. L. Taylor Co.,* 268 F. 635; *Jones v. Casstevens,* 222 N.C. 411, 23 S.E. 2d 303; *Rhyne v. Rhyne,* 151 N.C. 400, 66 S.E. 348.

"All instruments should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results . . ." *Fairbanks v. Supply Co.,* 170 N.C. 315, 86 S.E. 1051.

When we apply this rule to the facts of this case, it is apparent, we think, that the parties never contemplated, in 1948 and in 1949, that defendant was acquiring more than a right of way across the lands of plaintiffs with the incidental right to have its right of way freed from any use and occupancy by plaintiff. Hence, plaintiffs were given the right within twelve months to move the house. Plaintiffs were to have such materials as they could salvage in moving the house or in cutting off the portion of the house within the right of way. To guarantee that plaintiff's would clear the right of way of any portion of the house, the Commission retained $500, which was to be paid when the whole house or the portion of it in the right of way was cut off and moved from the right of way. The agreement was, by express language, "to .remove brick building from aforesaid right of way on or before December 2, 1949, at our expense . . ." Only a small portion of the house was within the boundaries of the right of way. According to plaintiffs' contention, only some two feet was within the right of way. According to defendant, some ten to fifteen feet was within the right of way. In any event, it would seem that the portion within the right of way could have been removed without destroying the value of the remainder for residential purposes. Certainly it would not be argued that $500 retained by the Commission was for the purchase of the entire residence. If defendant, as it now contends, was the owner of the entire building, why should it retain $500 to insure the destruction of a building of no value to nor wanted by it, but having distinct value to plaintiffs? Is it not clear that the $500 retained was intended to reimburse the Highway Commission for the cost of removing the portion of the building from the right of way if plaintiffs neglected to do so within the time fixed?

Defendant is the State agency created for the purpose of constructing and maintaining our public highways. All the other powers it possesses are incidental to the purpose for which it was created, G.S. 136-18. The Commission was not authorized to purchase residences not needed in the

construction or maintenance of our highway system. Had defendant condemned a right of way across plaintiffs' land in 1949, it would not have acquired any title to any building or part of a building not within the boundaries of the right of way. A deed conveying a right of way gives the grantee no more rights than he would acquire by condemnation. *Shepard v. R. R.,* 140 N.C. 391. Of course, it would have been obligated to pay just compensation for all the damages suffered by the property owner in the relocation of the highways then under construction. *Proctor v. Highway Commission,* 230 N.C. 687, 55 S.E. 2d 479; *Highway Commission v. Black,* 239 N.C. 198, 79 S.E. 2d 778.

Since defendant did not acquire, in 1948 and 1949, any portion of the building or land lying outside the right of way conveyed to it, it follows that plaintiffs are entitled to be fairly compensated for the part of the house as well as the land taken by the Highway Commission. The amount to be paid must be determined upon an appropriate issue submitted at a time when both plaintiffs and defendant have an opportunity to submit evidence as to the value of the property so taken.

For the errors committed there must be a

New trial.

JOHNSON, J., not sitting.

BOBBITT, J., took no part in the consideration or decision of this case.