STATE HIGHWAY COMMISSION v. J. B. BATTS AND WIFE, BETTY JOYNER BATTS.

(Filed 29 September, 1965.)

1. **Eminent Domain § 7a—**

  In proceedings to condemn an interest in lands, the court has the power to hear and determine whether the condemnation is for a public use and whether the Highway Commission is entitled to maintain the proceeding. G.S. 136-108.

HIGHWAY COMMISSION *v.* BATTS.

**2. Eminent Domain § 3—**
　　Private property can be taken under the power of eminent domain only for a public use, and what is a public use is a question of law for the trial court, reviewable on appeal.

**3. Highways § 1—**
　　The North Carolina State Highway Commission is an agency of the State charged with the duty of establishing and maintaining a State-wide system of highways, and the Commission has such powers as have been delegated to it and those which are necessarily incidental to the purpose for which it was created, including the power of eminent domain, G.S. 136-18(1), G.S. 136-19, G.S. 136-103, but it does not have power to condemn private property to construct a road for the private use of any person or group of persons.

**4. Eminent Domain § 3—**
　　"Public use" as related to the exercise of the power of eminent domain is not capable of precise definition applicable to all situations but must be construed with relation to the progressive demands and changing concept of governmental duties and functions, but, even so, it must be related to the carrying out of a public function and not the use by or for particular individuals or for the benefit of particular estates.

**5. Same— Uncontradicted evidence held to show that the proposed road was not for a public use.**
　　This proceeding by the State Highway Commission was instituted to condemn an interest in land to construct a road. The uncontradicted evidence was to the effect that the proposed road was to begin at the boundary of a secondary road and run some 3,316 feet and end in a *cul de sac*, and that it would abut five farm properties upon which there were three houses at the time the proceeding was initiated, a fourth house being constructed thereafter and that the five farm properties were occupied by relatives by blood or marriage. *Held:* The evidence discloses that the proposed road was for the substantial and dominant benefit of a private landowner and a few of his relatives and not for a public use, and injunction will lie to enjoin the Highway Commission from proceeding further with such condemnation.

**6. Eminent Domain § 7a—**
　　In a proceeding by the State Highway Commission to condemn an interest in lands for a proposed road, an answer alleging that the road was not for a public use states a legal defense, and demurrer *ore tenus* to the answer is overruled.

**7. Eminent Domain § 9—**
　　Where employees of the Highway Commission go upon land of a private owner and cut trees upon the right of way of a proposed road, and it is later judicially determined that the road was for a private use and that the Highway Commission had no power to condemn property for the road, the cutting of the trees amounts to an unauthorized trespass for which the Commission, as a State agency, cannot be held liable, since it had no authority to commit the trespass.

HIGGINS, J., dissenting.

DENNY, C.J., and SHARP, J., join in the dissent.

APPEAL by defendants from *Bone, E. J.*, January Special Session 1964 of NASH. Docketed and argued as Case No. 254, Fall Term 1964, and docketed as Case No. 288, Spring Term 1965.

The State Highway Commission, pursuant to the provisions of G.S. 136-103, *et seq.*, and pursuant to a resolution of said commission duly passed, instituted a civil action to condemn and take for public use an estate or interest in lands owned by defendants, beginning on the point of intersection of the common property line of Lovie Anne Joyner and J. B. Batts and wife with the southern right of way boundary of secondary Road 1717, and running thence in a southeasterly direction, approximately 3,316 feet to a point in the property of J. M. Batts, for the purpose of constructing and maintaining a highway known as Project 5.322, Nash County. The action was commenced by the issuance of a summons, the filing of a complaint, the declaration of a taking, and the deposit of estimated compensation. The declaration of taking states that the interest or estate taken is "Easements, in perpetuity, for right of way for all purposes for which the plaintiff is authorized by law to subject the same." An identical action was commenced by the State Highway Commission against Lovie Anne Joyner. The pleadings in the Joyner case are not in the record.

Defendants filed an answer denying that the condemnation and taking was for a public purpose, and alleging that the condemnation and taking of their lands to construct and maintain a road 3,316 feet long ending in a *cul de sac* was for the sole use and private benefit of W. M. Batts and wife, and a few of their relatives, and praying that the court, after final hearing, permanently enjoin plaintiff from proceeding further with the condemnation proceeding, but if this relief be denied by the court, then that the defendants be awarded just compensation for their land. taken. Defendants filed in their answer a cross-action asking that they recover $75 for growing timber cut on their land prior to the issuance of the temporary injunction signed by Fountain, J.

Fountain, J., on motion of defendants, issued a restraining order enjoining plaintiff from constructing the proposed highway until a final hearing.

The action came on to be heard before Bone, E. J., at the January Special Session 1964 of Nash "for the purpose of determining whether or not the taking and acquisition of property of the defendants as set forth in the complaint and declaration of taking filed by the plaintiff, State Highway Commission, is for a public use." The attorneys for plaintiff and for defendants stipulated that the matter should be heard by Judge Bone without a jury and upon affidavits. The action of the *State Highway Commission v. Lovie Anne Joyner et al.* was con-

solidated with this case for the purpose of the hearing. Judge Bone, after hearing the affidavits offered by the plaintiff and the affidavits offered by defendants, and the arguments of counsel, made the following FINDINGS OF FACT:

> "1. That this action was instituted under the provisions of Article 9 of Chapter 136 of the General Statutes by the filing of a Complaint and Declaration of Taking, deposit of estimated compensation, and issuance of Summons which was duly served on the Defendants; that in said Complaint and Declaration of Taking, Plaintiff alleged that it is necessary to condemn and appropriate an interest or estate in property of Defendants for public use in the construction of Secondary Road 1768 under Project 5.322, Nash County; that Defendants filed Answer denying that said road was for public use for the reason that it was for the sole use and private benefit of Mr. and Mrs. W. M. Batts and a few of their relatives.

> "2. That on June 6, 1963, and prior to the institution of this action, the State Highway Commission duly passed a resolution determining that it was necessary to appropriate an easement of right of way across the property of Defendants herein for public use in the construction of Project 5.322, Nash County.

> "3. The investigation and consideration of the proposed road by the State Highway Commission prior to said resolution of June 6, 1963, was at the instigation of Mr. and Mrs. W. M. Batts, individuals owning property fronting on the proposed road.

> "4. That on August 1, 1963, the State Highway Commission duly passed a resolution placing said proposed Secondary Road 1768 upon the North Carolina Secondary Roads System.

> "5. That upon completion, said road will abut upon at least five different properties and will serve four dwellings; that said road will be open to the general public when completed and the public will have a legal right to use said road. That the appropriation of Defendants' property is for the purpose of constructing a State maintained public road."

Based on his FINDINGS OF FACT, Judge Bone made one CONCLUSION OF LAW:

> "1. That the appropriation of right of way by the Plaintiff as alleged in the Complaint across property of Defendants herein is for a public use, and the Plaintiff is entitled to maintain this action."

Based upon his findings of fact and his conclusion of law, Judge Bone entered Judgment denying defendants' prayer that the action be dismissed, and retaining the cause for the determination of all other issues raised by the pleadings, including the issue of just compensation. The learned judge further ordered that the temporary restraining order entered by Fountain, J., on 21 October 1963 is continued until the determination by the Supreme Court of the appeal taken from his judgment by defendants, on condition that defendants file with the court a suitable bond in the sum of five hundred dollars. Defendants J. B. Batts and wife filed the required bond.

From the judgment entered by Judge Bone, defendants J. B. Batts and wife and defendant Lovie Anne Joyner appealed to the Supreme Court. Counsel for the State Highway Commission and counsel for Lovie Anne Joyner stipulated that the determination by the Supreme Court of the appeal in the case of *State Highway Commission v. J. B. Batts and wife* would be determinative in the case of *State Highway Commission v. Lovie Anne Joyner* in the Nash County Superior Court.

*Attorney General T. W. Bruton, Assistant Attorney General Harrison Lewis, and Trial Attorney Claude W. Harris for the North Carolina State Highway Commission plaintiff appellee.*

*Don Evans for defendant appellants.*

PARKER, J. Defendants first assign as error that Judge Bone erred in finding as a fact that on 6 June 1963 the State Highway Commission duly passed a resolution determining that it was necessary to appropriate an easement of right of way across the property of defendants herein for public use in the construction of Project 5.322, Nash County. Defendants' second assignment of error is that Judge Bone erred in his finding of fact No. 5 "That the appropriation of Defendants' property is for the purpose of constructing a State maintained public road." Defendants' third and last assignment of error, except a formal one to the judgment, is that Judge Bone erred in his conclusion of law "That the appropriation of right of way by the Plaintiff as alleged in the Complaint across property of Defendants herein is for a public use."

Plaintiff offered in evidence an excerpt from the minutes of the State Highway Commission meeting held in Raleigh, North Carolina, on 6 June 1963 with eleven members present. This excerpt from the minutes shows that the following resolution, the material parts of which are quoted here, was introduced by Commissioner Elliott, seconded by Commissioner Webb, and being put to a vote was unanimously carried:

"WHEREAS, right-of-way acquisition in accordance with the preliminary right-of-way plans on file in the Right-of-Way Department has heretofore been determined to be necessary and authorized by the Commission; and

\*        \*        \*

"WHEREAS, the final plans for the following projects have been prepared and provide for the construction of the sections of highways embraced in said projects within the uniform parallel right-of-way widths as shown on the respective plans, \* \* \* and

"WHEREAS, upon the recommendations of the engineers of the Commission, the Commission finds that such rights of way as shown on the final plans and hereinafter set out are necessary for the construction of said projects;

"Now, THEREFORE, BE AND IT IS HEREBY RESOLVED AND ORDAINED that the rights of way for the location, construction, relocation and reconstruction of the sections of highways embraced in the following projects shall be as shown in detail on the final plans for said projects, as hereafter identified \* \* \*."

Then follows a description of seven projects, and a description of the eighth project which is as follows:

"*Project 5.322, Nash County:* Grading, drainage and paving from the point of intersection of the common property line of Lovie Anne Joyner and J. B. Batts, *et ux*, with the southern right-of-way boundary of S.R. 1717, and running thence in a southeasterly direction, approximately 3,316 feet to a point in the property of J. M. Batts, with right of way as indicated upon the final plans for said project, the same being identified as Addendum 8 to the minutes of the June 6, 1963 State Highway Commission Meeting and are incorporated herein by reference."

After the eighth project follows a description of four more projects. Then the excerpt from the minutes ends with these words:

"BE IT FURTHER RESOLVED that the Right-of-Way Department is directed to acquire the hereinabove described rights of way, construction easements and control of access and such rights of way, construction easements and control of access as heretofore acquired by the Right-of-Way Department in conformance with said final plans is hereby ratified, and the Attorney General is requested to institute on behalf of the Commission proceedings to acquire rights of way, construction easements and control of access upon determination by the Chief Right-of-Way Engineer and the Attorney

General that it is necessary that such proceedings be instituted to carry forward the right-of-way acquisition for said projects."

Plaintiff further offered in evidence an excerpt from the minutes of the State Highway Commission meeting held in Raleigh, North Carolina, on 1 August 1963 with seventeen members present. This excerpt from the minutes shows the following:

"Acting on the recommendation of Secondary Roads Director Roney, the following additions, deletions, and a correction to a previously approved addition, all pertaining to the Secondary Road System, were approved on a motion made by Commissioner Tate, seconded by Commissioner Elliott, and unanimously carried: "ADDITIONS:

| "County and Petition Number | Length (Miles) | Description, Date of Report " |
|---|---|---|

Then follows a list of 77 ADDITIONS from many counties, and in this list the following:

| "Nash | 6532 | 0.60 | Batts Rd., 7-8-63" |
|---|---|---|---|

Plaintiff also offered in evidence an affidavit of Donald Thomas Overman to this effect: He is now employed by the State Highway Commission as Safety and Emergency Planning Engineer, and that prior to 13 July 1963 he was District Engineer, Division 4, District 2, which embraces Nash County. He is familiar with Secondary Road 1768, Nash County, known locally as the Batts Road. Prior to 13 July 1963, and particularly on 6 June 1963, this road existed as an unimproved farm road. That said road as relocated and reconstructed by the State Highway Commission will serve at least five different property owners and four dwellings, and is on the State highway system, and when completed will be open to the general public.

Defendants' evidence shows these facts: Their land is between W. M. Batts' land and Secondary Road 1717. An old farm road leads from Secondary Road 1717 across the lands of Lovie Anne Joyner to the lands of W. M. Batts and J. M. Batts, now occupied by Charlie Batts. This old farm road has never been closed due to weather conditions and has provided free access to the highway from W. M. Batts' and J. M. Batts' lands for over 60 years. The only people using this farm road are the people living back of J. B. Batts and Lovie Anne Joyner and people who go back there to call on them. The State Highway Commission seeks to condemn their land for the purpose of constructing a dead-end road over it for the sole use and private benefit of Mr. and Mrs. W. M. Batts and a few of their relatives. The action of

the State Highway Commission was initiated by a letter of Mr. and Mrs. W. M. Batts. Mr. and Mrs. W. M. Batts were notified by the State Highway Commission that if they wanted the road they requested, they would be required to give the Commission a bond indemnifying them for whatever damages defendants and Lovie Anne Joyner might prove as a result of the condemnation, and that Mr. and Mrs. Batts did give the Commission such an indemnifying bond. That the State Highway Commission advised Mrs. W. M. Batts of the policy of the Commission requiring four dwellings fronting on the proposed road. At that time there were three dwellings fronting on the proposed road, to wit, Charles Batts, nephew of W. M. Batts, and his mother-in-law in one dwelling; C. O. Vick, Mrs. Batts' brother, in another dwelling; and Mr. and Mrs. W. M. Batts in the other dwelling. Thereafter, Charlie Batts built a shell house on the proposed road, and Mrs. W. M. Batts' daughter, Mrs. Phil Ellis, moved in with her family. Mrs. W. M. Batts sought the help of the Nash County Board of Commissioners, and on 8 June 1962 presented a written request for a proposed new road to said Board, purporting to be signed by all the property owners on the said road. However, two of the adjoining property owners, J. B. Batts and Lovie Anne Joyner had not signed it, and had not even been apprised of said written request. As a consequence of the written request, the Nash County Board of Commissioners on 8 June 1962 passed a resolution requesting the State Highway Commission to take the proposed road into the State secondary road system. This resolution was forwarded to the Commission. However, on 3 September 1963, when the Nash County Board of Commissioners discovered that all the property owners had not in fact signed the request, the Board passed another resolution rescinding their prior resolution of request, and so notified the State Highway Commission. The proposed road is only 3,316 feet long, and dead-ends at or near Charlie Batts' house. Back of Charlie Batts' property is Tar River. The only persons who would use the proposed road, other than Mr. and Mrs. W. M. Batts and their relatives, would be persons having business or social relations with them. That the following sketch marked Exhibit "X" shows the proposed road, the farm road through the property of Lovie Ann Joyner, and the lands of the various parties adjacent to the proposed road and the farm road.

HIGHWAY COMMISSION *v.* BATTS.

EXHIBIT "X"

S.H.C. v BATTS #254

Judge Bone was empowered by the provisions of G.S. 136-108 to hear and determine the question specified in his judgment.

The basic question for decision is this: Whether the taking and condemnation of defendants' property as set forth in the complaint and declaration of taking filed by the State Highway Commission is for a public use for a State and county public highway, as contended by the Commission, or is for the sole use and benefit of W. M. Batts and wife and a few of their relatives, as contended by defendants.

In the exercise of the sovereign power of eminent domain, private property can be taken only for a public use and upon the payment of just compensation. *Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600; Strong's N. C. Index, Vol. 2, Eminent Domain, § 3. In any proceeding for condemnation under the sovereign power of eminent domain, it is settled by our decisions that what is a public use is a judicial question for ultimate decision by the court as a matter of law, reviewable upon appeal. *Redevelopment Commission v. Hagins,* 258 N.C. 220, 128 S.E. 2d 391; *Charlotte v. Heath, supra; Highway Commission v. Young,* 200 N.C. 603, 158 S.E. 91; *Yarborough v. Park Commission,* 196 N.C. 284, 145 S.E. 563. To the same effect, *Rindge Co. v. Los Angeles County,* 262 U.S. 700, 67 L. Ed. 1186, in which it is said: "The nature of a use, whether public or private, is ultimately a judicial question."

The State Highway Commission was created by the General Assembly, G.S. 136-1, as an unincorporated State agency or instrumentality, and is charged with the duty of exercising certain administrative and governmental functions for the purpose of constructing and maintaining State and county public roads. *Smith v. Highway Commission,* 257 N.C. 410, 126 S.E. 2d 87; *Equipment Co. v. Hertz Corp.,* 256 N.C. 277, 123 S.E. 2d 802. "The general purpose of the laws creating the State Highway Commission is that said Commission shall take over, establish, construct, and maintain a State-wide system of hard-surfaced and other dependable highways running to all county seats, and to all principal towns, State parks, and principal State institutions, and linking up with state highways of adjoining states and with national highways into national forest reserves by the most practical routes, with special view of development of agriculture, commercial and natural resources of the State * * *." G.S. 136-45. The Commission is vested with the power of "general supervision over all matters relating to the construction of the State highways * * *." G.S. 136-18(1). "All the other powers it possesses are incidental to the purpose for which it was created." *DeBruhl v. Highway Commission,* 245 N.C. 139, 95 S.E. 2d 553.

The State Highway Commission as a State agency or instrumentality possesses the sovereign power of eminent domain, and by reason thereof

can take private property for public use for highway purposes upon payment of just compensation. G.S. 136-19, 136-103; *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182; *Highway Commission v. Basket,* 212 N.C. 221, 193 S.E. 16.

G.S. 136-18(2) and 136-45 vest in the State Highway Commission broad discretionary powers in establishing, constructing, and maintaining highways as part of a State-wide system of hard-surfaced and other dependable highways, but the State Highway Commission has no power to condemn private property to construct a road for the private use of any person or group of persons, and if it does so, it is an arbitrary act and an abuse of the discretion vested in it.

The State Highway Commission designates the road it proposes to construct in this case across the lands of defendants and Lovie Anne Joyner as Project 5.322, Nash County. In its declaration of taking, it thus describes Project 5.322, Nash County:

> "Beginning on the point of intersection of the common property line of Lovie Anne Joyner and J. B. Batts *et ux* with the southern right of way boundary of Secondary Road 1717, and running thence in a southeasterly direction, approximately 3,316 ft. to a point in the property of J. M. Batts, end of project."

It is therefore indubitable that the road will end in a *cul de sac* on the property of J. M. Batts about 3,316 feet from Secondary Road 1717. A *cul de sac* is defined as a way, street or alley open at one end only. Black's Law Dictionary, 4th Ed., p. 453; Ballentine's Law Dictionary, 2d Ed., p. 317; 25 C.J.S., p. 20.

This is said in 39 C.J.S., Highways, § 27, pp. 948-49:

> "The character of the place of beginning and ending of a proposed highway has a bearing on the question of its public necessity, utility, or convenience. If the proposed road neither begins nor ends at a pre-existing highway or other public place, it cannot as a rule be established as a highway, since in the nature of the case no public necessity exists for it, and if formally laid out it would not be of public utility or convenience; one terminus at least must be at a pre-existing highway or other public place. However, except where it is otherwise provided by statute, it is not requisite, in order to justify the establishment of a highway, that it should both begin and end at pre-existing highways or other public places, provided it is a public necessity, and, if laid out, will be of public utility and convenience; it is sufficient if one terminus is at an existing highway or other public place. Accordingly a *cul de sac* may be established as a highway, if public

necessity, utility, or convenience requires, provided, in at least one jurisdiction, the terminus is at a place of necessary public resort.

"It has been held sufficient for the terminus of a public road to be located at a river, a creek, a lake, a church, a cemetery, a public school, a railroad station, a large manufacturing establishment, and intersecting points on two public roads. A road may properly terminate at the state line, although there is no highway connecting with it in the adjoining state, or at a county line, or at a town line, notwithstanding the persons in the adjoining town only will utilize it."

To the same effect, see Lewis on Eminent Domain, 3d Ed., Vol. I, pp. 512-13. See also Nichols on Eminent Domain, 3d Ed., p. 705, and 25 Am. Jur., Highways, § 5.

In 39 C.J.S., Highways, § 1, p. 916, it is said:

"According to the weight of authority, however, it is not essential that both termini of a highway connect with a public highway or a place of public resort, and it is held that a *cul de sac* may be a public highway, although, of course, it is not necessarily one."

In *S. v. McDaniel*, 53 N.C. 284, defendant was placed on trial on an indictment for obstructing a public highway. The jury found a special verdict. The trial court being of opinion defendant was not guilty upon the facts found in the special verdict gave judgment accordingly, and the State appealed. The Court, after discussing the facts found in the special verdict, citing authority, and stating "* * * we concur with the Superior Court in the judgment that the obstruction of it is not indictable," went on to use this language, which is *obiter dictum:* "From the finding of the jury, we suppose the road terminated at the church, and was, therefore, what is called in French phrase, a *cul de sac*. It is difficult to conceive of a highway a mile long and closed up at one end, for the public at large cannot be in use of it * * *." No authority is cited to sustain the *obiter dictum*. If it be construed to mean, which it apparently does, that a highway connecting at one end with a public highway and ending in a *cul de sac* cannot as a matter of law be a highway, we disapprove of it as being against the great weight of modern authority.

"Public use," as applied in the exercise of the power of eminent domain, is not capable of a precise definition applicable to all situations. The term is elastic, and keeps pace with changing conditions, since the progressive demands of society and changing concepts of governmental duties and functions are constantly bringing new subjects

forward as being for "public use." *Charlotte v. Heath, supra;* 18 Am. Jur., Eminent Domain, § 36.

This is said in 18 Am. Jur., Eminent Domain, § 38:

> "Use by the general public as a universal test is recognized as inadequate. If public use is use by the public, eminent domain might be employed to secure sites for hotels and theaters, to which places in many states the public has by custom or statute [now perhaps in all states by reason of the recent federal Civil Rights Act] the right of access without discrimination. If public use is synonymous with public advantage, or rather what the legislature might reasonably conceive to be the public advantage, not only might eminent domain be employed in behalf of all large industrial enterprises, but the size of farm holdings might be regulated to suit the prevailing economic theory of the time. Public use, as nearly as can be deduced from the generally accepted doctrines and decisions, may be defined as to include the following classes of takings:
>
> "(1) Takings to enable the Government of the United States or of a state or subdivision thereof to carry on its public functions and to conserve the safety and health of the public whether or not the individual members of the public may make use of the property so taken. Public necessity alone justifies governmental taking of private property."

In *Charlotte v. Heath, supra,* the Court said:

> "The use which will justify the taking of private property under the exercise of the right of eminent domain is the use by or for the government, the general public, or some portion thereof as such, and not the use by or for particular individuals or for the benefit of particular estates. The use, however, may be limited to the inhabitants of a small locality, but the benefit must be in common."

In *Reed v. Highway Commission,* 209 N.C. 648, 184 S.E. 513, the Court held that in taking over a road as a part of the highway system, the scenic value of such road and its necessity as a part of the system of scenic highways for the public may be considered in determining whether taking over the road is for a public or private purpose.

In the case of *Stratford v. City of Greensboro,* 124 N.C. 127, 32 S.E. 394, a taxpayer, resident of Greensboro, brought an action to restrain the city from borrowing money from Caesar Cone with which to open and make a new street, alleging that such activities by the city are not necessary and required for the public use of the city, but on the

contrary they were to be made for the private use and benefit of Caesar Cone; that such benefits as might accrue to the city were only incidental. Caesar Cone was the owner of a large tract of land situate on the north and northeast of the city of Greensboro and lying partly within the corporate limits of the city. The plaintiff also sought to restrain the city from holding an election for authorization to borrow the money from Cone. The first issue submitted to the jury was framed on the view that in all cases where municipal authorities proceed to open and build new streets, having authority so to do in their charter or general law, such proceedings cannot be made the subject of judicial investigation except in cases of actual fraud. There was a verdict in favor of the defendants. The Supreme Court awarded a new trial. In its opinion the Court said: "In the case before us, the main question raised by the pleadings was whether the use, to which the new street and improvements were to be devoted, was a public use. It was not necessary on the part of the plaintiff to allege or prove actual fraud in the transaction. If the substantial benefit was for the defendant Cone as an individual, and the benefit to the city only incidental and purely prospective, then the proceedings of the board were *ultra vires* and void."

Judge Bone's 5th finding of fact in part is "that upon completion, said road will abut upon at least five different properties and will serve four dwellings." The uncontradicted evidence is that at the time Mr. and Mrs. W. M. Batts wrote their letter which initiated plaintiff's action here, 3 April 1961, there were three buildings fronting on the proposed road, to wit, Charlie Batts, nephew of W. M. Batts, and his mother-in-law in one dwelling, C. O. Vick, Mrs. Batts' brother, in another dwelling; and Mr. and Mrs. W. M. Batts in the other dwelling; and thereafter Charlie Batts built a shell house on the proposed road, and Mrs. W. M. Batts' daughter, Mrs. Phil Ellis, moved in with her family. The uncontradicted evidence is that farming is done on the property of W. M. Batts, J. M. Batts, and Lovie Anne Joyner, and that no other business is done there by the present occupants.

Plaintiff's declaration of taking shows conclusively that the road it proposes to construct by condemning lands of defendants here and of Lovie Anne Joyner will begin with the southern right of way boundary of Secondary Road 1717, will run thence in a southeasterly direction about 3,316 feet, and end in a *cul de sac* at a point in the property of J. M. Batts. There is nothing in the record before us to show the proposed road will have any scenic value, or that it will end at any place used by the public. There is nothing in the record before us to show that the construction and maintenance of the proposed road ending in a *cul de sac* on the property of J. M. Batts is required by public necessity,

convenience, or utility. Judge Bone found as a fact "that on August 1,. 1963, the State Highway Commission duly passed a resolution placing said proposed Secondary Road 1768 upon the North Carolina Secondary Roads System." The State Highway Commission's resolution does not state it was for a public use, but we will assume that that may be implied from the wording of the resolution. That declaration by the State Highway Commission is entitled to great weight, but the State Highway Commission cannot by its mere *fiat* make a private use a public use. The existence of a public use is a prerequisite to the right of the State Highway Commission to exercise the power of eminent domain to condemn private property, and final determination as to whether the proposed condemnation and taking of defendants' land by condemnation is for a public use is for judicial determination. The State Highway Commission's declaration of taking and all the evidence in the record clearly show that the construction of Project 5.322, Nash County, ends in a *cul de sac* at a point in the land of J. M. Batts and that when constructed Project 5.322, Nash County, would be for the substantial and dominant use and benefit of Mr. and Mrs. W. M. Batts and a few of their relatives; and that any use by, or any benefit for, the general public will be only incidental and purely conjectural; that it is not for a public use, and that no public necessity, convenience, or utility exists for the State Highway Commission to condemn defendants' and Lovie Anne Joyner's land, and that the building of the proposed road by plaintiff will be an abuse of the discretion vested in it to establish, construct, and maintain highways for public use, as part of a State-wide system of hard-surfaced and other dependable highways. Under such circumstances, the State Highway Commission cannot exercise its sovereign power of eminent domain. *Stratford v. City of Greensboro, supra; Brown v. Gerald,* 100 Me. 351, 70 L.R.A. 472, 109 Am. St. Rep. 526, 61 A. 785; *Minnesota Canal and Power Co. v. Koochiching Co.,* 97 Minn. 429, 5 L.R.A. (N.S.) 638, 107 N.W. 405, 7 Ann. Cas. 1182; 18 Am. Jur., Eminent Domain, p. 671; Annot. 44 A.L.R., p. 737. To sustain the proposed condemnation and appropriation of defendants' lands under the facts and circumstances here would set a dangerous precedent for the expenditure of public funds by the State Highway Commission to condemn private property for the construction and maintenance of a road for private use.

Defendants have assigned as error this part of Judge Bone's 5th finding of fact: "That the appropriation of defendants' property is for the purpose of constructing a State-maintained public road." This exception is sustained. There is no evidence in the record to support this challenged finding of fact, in that all the evidence in the record shows

that the taking by plaintiff of defendants' lands here was without their consent and against their will and not for a public purpose.

Judge Bone erred in finding and concluding as a matter of law that the condemnation and appropriation of a right of way by plaintiff as alleged in the complaint and the declaration of taking across lands of defendants here and of Lovie Anne Joyner is for a public use, and that plaintiff is entitled to maintain this action. Based upon plaintiff's complaint and its declaration of taking, and all the evidence, he should have found as facts and concluded as a matter of law and adjudged that the condemnation and appropriation of a right of way across lands of defendants and Lovie Anne Joyner to construct Project 5.322, Nash County, ending in a *cul de sac* on the lands of J. M. Batts, was not for a public use, but was for the substantial and dominant use and benefit of W. M. Batts and wife, and a few of their relatives, and that any use by, or benefit to, the public would be merely incidental and entirely conjectural, and that the building of the proposed road by plaintiff will be an abuse of the discretion vested in it to establish, construct, and maintain highways, as part of a State-wide system of hard-surfaced and other dependable highways, and he should have issued an injunction permanently restraining plaintiff from proceeding with the condemnation and appropriation of their lands.

Plaintiff filed in this Court a demurrer *ore tenus* to the further answer and cross-action of the defendants, upon the ground that the same fails to state a cause of action as an affirmative defense. The further answer alleges as a defense that the condemnation and appropriation of their land by the plaintiff was not for a public use but was for the sole use of Mr. and Mrs. W. M. Batts and a few of their relatives, which, if established, is a legal defense to plaintiff's action. The demurrer *ore tenus* is overruled.

The judgment entered below is reversed, and a judgment will be entered in the superior court of Nash County in accordance with this opinion, and in this judgment it will be adjudged and decreed that defendants' cross-action to recover $75 for plaintiff's cutting of growing trees upon their lands be dismissed. Defendants allege that the construction of such highway is beyond the scope of the authority vested in the Commission and inferentially that acts done in furtherance thereof are also unauthorized. We have agreed. Therefore, the cutting of the trees was not a taking of private property for public use. It was merely an unauthorized trespass by employees of the Commission, for which no cause of action exists against the Commission in favor of defendants. It is *damnum absque injuria.* An agency of the State is powerless to exceed the authority conferred upon it, and therefore cannot commit an actionable wrong. *Schloss v. Highway Commission,* 230 N.C.

489, 53 S.E. 2d 517; *Carpenter v. R. R.,* 184 N.C. 400, 114 S.E. 693; *Teer v. Jordan,* 232 N.C. 48, 59 S.E. 2d 359; *Moore v. Clark,* 235 N.C. 364, 70 S.E. 2d 182; *Pharr v. Garibaldi,* 252 N.C. 803, 115 S.E. 2d 18; *Shingleton v. State,* 260 N.C. 451, 133 S.E. 2d 183. The defendants should not be heard to say that the taking of their land is not for a public purpose, but the taking of their trees was.

Reversed.

HIGGINS, J., dissenting:   The parties stipulated that Judge Bone should try the case without a jury. Pursuant to the stipulation, he found:

"5.   That upon completion, said road will abut upon at least five different properties and will serve four dwellings; that said road will be open to the general public when completed and the public will have a legal right to use said road. That the appropriation of Defendants' property is for the purpose of constructing a State maintained public road."

Upon the foregoing finding, he concluded:

"1.   That the appropriation of right of way by the Plaintiff as alleged in the Complaint across property of Defendants herein is for a public use, and the plaintiff is entitled to maintain this action."

The finding of fact is supported by affidavits. It sustains the conclusion. Both support the order entered by Judge Bone. I vote to affirm.

DENNY, C.J. & SHARP, J., join in this dissent.