TOWN OF SELMA v. J. R. NOBLES ET AL.

(Filed 12 April, 1922.)

1. **Eminent Domain—Condemnation—Statutes—Exceptions—Dwellings—Municipal Corporations—Cities and Towns.**

Where a city, under its charter, is given the same power to condemn lands of private owners for municipal purposes that is given to railroads and other public utilities, it is bound by the restrictions placed on them by C. S., 1717, which provides that such power shall not extend, among other things, to dwellings, without the consent of the owner; and the principle arising under the general power to condemn, leaving the matter largely within the discretion of the governing authorities seeking condemnation, does not apply to the statutory exceptions.

2. **Eminent Domain — Condemnation — Clerks of Court— Procedure—Appeal—Jurisdiction—Courts.**

Where issuable matters are raised before the clerk in proceedings to condemn the lands of private owners for a public use, the clerk should pass upon these matters presented in the record, have the land assessed through commissioners, as the statute directs, allowing the parties, by exceptions, to raise any question of law or fact issuable or otherwise to be considered on appeal to the Superior Court from his award of damages, as provided by law.

**3. Same—Injunction.**

Under the method of procedure in the condemnation of lands for a public use: *Held*, that issuable matters raised by the parties should be taken advantage of by exceptions, and the entire record sent up to the Superior Court by the clerk, where all exceptions may be presented, the rights of the parties may be protected meantime from interference by injunction issued by the judge on application made in the cause, and in instances properly calling for such course.

**4. Eminent Domain—Condemnation—Municipal Corporations—Cities and Towns—Streets—Offer to Dedicate—Acceptance.**

Where a municipal corporation has not accepted the offer of a private owner of lands to dedicate the streets and an open square of his lands he has had platted for sale, the proceedings of the municipal corporation to condemn a part of these lands for a public use presents entirely a question of private ownership, and of itself sets up no issue in bar of condemnation proceedings before the clerk, pursuant to the statutory authority and according to the course and practice of the court.

**5. Same—Acquired Jurisdiction.**

Where the clerk of the Superior Court has erroneously at once transferred the proceedings in condemnation to the Superior Court on issue joined between the parties, and an appeal therefrom has been taken to the Superior Court, the judge thereof acquires jurisdiction for the hearing and determination of the controversy under the provisions of C. S., 637, and may order other proper or necessary parties to be made for the further determination of the cause.

**6. Eminent Domain — Condemnation—Nuisance—Dwellings—Statutes— Exceptions.**

The creation and maintenance of a nuisance which sensibly impairs the value of lands of private owners is a taking within the principle of eminent domain and condemnation proceedings thereunder, and within the exception contained in C. S., 1714, withdrawing dwellings from the effect of the statute.

**7. Same—Appeal—Superior Courts—Courts—Jurisdiction—Discretion of Court—Parties—Trials.**

The owner of land divided it into building lots, upon condition of the advantages of a square to be kept open for their use, and some of these lots had been purchased and built thereon for homes. The town, not having the statutory authority to condemn dwellings, instituted proceedings to condemn this open square for an addition to the city cemetery, and upon issue joined in Superior Court as to whether a cemetery so situated would be a nuisance and injure the homes upon the lots sold, the clerk, under exception, erroneously transferred the proceedings for trial at term: *Held*, it was in the discretion of the Superior Court judge to make the purchasers of the homes parties and hold the case for the determination of the jury before proceeding further.

PROCEEDINGS to condemn land of defendant J. R. Nobles *et al.*, heard on exception and motion to remand, before *Cranmer, J.,* presiding in the courts of the Fourth Judicial District, in October, 1921.

It appears from a perusal of the record and case on appeal that the town of Selma, under and by virtue of chapter 116, Private Laws of 1915, amending charter of said town, instituted the present proceedings before the clerk of the Superior Court to condemn about two and one-half acres of land belonging to defendant Nobles as an addition to the public cemetery of the town, which was about filled except certain plats owned by individuals. Defendant Nobles answered alleging that he owned a body of land lying in the suburbs of Selma, or adjacent thereto, which he had laid off and platted into lots, showing designated streets, etc., and in which the plat desired had been made to appear as a public square, and various persons had bought lots in reference to this plat, and in reliance on the representation that same was to be and remain a public square, and some of them had improved these lots and were living thereon; and there was no necessity for this land, as the town owned a body of land near there, much better suited for its purpose, and on his answer demanded, among other things, a jury trial as to necessity for taking defendant's land for the purpose indicated, and also as to the amount of damages to be awarded in case the same was taken, etc.

The clerk being of opinion that the answer raised material issues, entered an order transferring the cause to the Superior Court for trial of same before the jury, and petitioners excepted and appealed to Superior Court. In the Superior Court his Honor, being of opinion that there were material issues raised, entered judgment approving the action of the clerk, and that the defendant was entitled to have same tried by a jury, etc., and that the costs be taxed against the appellant. Petitioners excepted. The court further ordered that J. T. Newberry and four others who had bought land of codefendant under conditions as stated, and had improved same, be made parties defendant. Thereupon these defendants became parties, and answered alleging the facts of sale and dedication of this land as a public square by defendant Nobles; that they had bought and improved their lots in reference to same, and were living thereon with their families. That the town had not extended its water supply to this locality, but they procured their water from wells, and allege further: "That the location of the cemetery on this lot of land will greatly damage and injure them, in the use and enjoyment of their property, by depriving them of the use of said public square, and by closing Chestnut Street, and by partially closing Third Avenue.

That from about the center of said public square the ground slopes both in a northwestwardly and easterly direction. That the town of Selma has not extended its water mains to defendants' property, and that they are dependent upon wells for their water supply. That due to the condition of the soil and the sloping of the land from said public square, the drainage from said public square is by and through the lands

of these defendants and the use of said public square for burial purposes would contaminate and pollute the only water supply these defendants have, rendering it unsafe and unfit for drinking purposes of these defendants and the members of their families, to the very great damage of these defendants.

The court, on this and the answer of J. R. Nobles, being of opinion that there were material issues raised which must be decided by a jury before further proceedings had, entered judgment, as stated, affirming the action of the clerk and in denial of plaintiff's motion to remand, etc. Thereupon petitioner excepted and appealed to this Court.

*R. L. Ray and Winfield H. Lyon for plaintiffs.*
*Walter L. Watson and Albert M. Noble for defendants.*

HOKE, J. The charter of the town of Selma, as amended by chapter 116, Private Laws of 1915, conferred upon the municipal government the right to condemn land for purposes of a cemetery, "in the same manner as lands are condemned by railroads and public utility companies, and with the same rights of appeal." Under C. S., ch. 33, these companies have the right to condemn lands desired for the construction of their roads, etc., by special proceedings as therein described, and section 1714 of the statute provides that such power shall not extend to the condemnation of a dwelling-house, yard, kitchen, garden, or burial ground without the consent of the owner, unless the same is expressly authorized by the charter or some provision of the Consolidated Statutes.

In construing this legislation, the Court has held that where the general power to condemn exists, the right of selection as to route, quantity, etc., is left largely to the discretion of the company or corporation, and does not become the subject of judicial inquiry except on allegations of fact tending to show bad faith on the part of the company or corporation or an oppressive and manifest abuse of the discretion conferred upon them by the law. *Power Co. v. Wissler,* 160 N. C., 269. As to the procedure in a case of this kind, our decisions are to the effect that notwithstanding the appearance of issuable matter in the pleadings, it is the duty of the clerk, in the first instance, to pass upon all disputed questions presented in the record, and go on to the assessment of the damages through commissioners duly appointed, and allowing the parties, by exceptions, to raise any questions of law or fact issuable or otherwise to be considered on appeal from him in his award of the damages as provided by law. *R. R. v. Mfg. Co.,* 166 N. C., 168; *Abernathy v. R. R.,* 150 N. C., 97; *R. R. v. R. R.,* 148 N. C., 59.

In *Abernathy's case, supra,* the principle is stated as follows: "While in other special proceedings, when an issue of fact is raised upon the

pleadings, it is transferred to the civil issue docket for trial, in condemnation proceedings the questions of law or fact are passed upon by the clerk, to whose rulings exceptions are noted, and no appeal lies until the final report of the commissioners comes in, when, upon exceptions filed, the entire record is sent to the Superior Court, where all exceptions may be presented." The method of procedure indicated in these cases should hold, though there should be issues raised concerning an owner's dwelling-house and other, the cases excepted from the operation of the statute, and in such case, on proper showing, the rights of the parties may in the meantime be protected from interference by injunction issued by the judge, on application made in the cause. *Retreat Asso. v. Development Co., ante,* 43.

This being the law applicable, we see nothing in the pleadings, as presented before the clerk, that should prevent his proceeding to an award of damages, as the statute directs, the allegations being that the owner had laid off this property into streets and blocks, leaving this particular block as an open square, and that certain persons had bought property in reference to the plat made. This was throughout, as we understand the record, entirely a question of private ownership, the municipality never having accepted this as a dedication to the public, and though the claimants might very properly have been made parties, there is nothing to prevent or modify the power of condemnation given to the municipality by its charter.

Taking a different view of the matter, however, the clerk decided to transfer the cause for trial of the issues in the Superior Court, and refused to proceed further, whereupon plaintiff excepted and appealed.

The cause having then been brought before the Superior Court, under C. S., 637, the judge had "jurisdiction," and in the exercise of the powers so conferred, his Honor entered an order that the purchasers of portions of defendant's property abutting on the square should be and they were made parties defendant, and filed an answer alleging, among other things, that they had bought and built on the abutting property, and occupied same; that the town had not extended its water supply to that locality, but their water for drinking and other domestic purposes was obtained from wells on the premises; that the drainage was directly from the square in question on and through their premises, and an establishment of a cemetery on said block would create a nuisance, endangering the health of their families, etc.

It is held with us that the creation and maintenance of a nuisance which sensibly impairs the value of property is a taking within the principle of eminent domain, and condemnation proceedings thereunder. *Hines v. Rocky Mount,* 162 N. C., 409, and authorities cited. And if it should be established that the maintenance of a cemetery at the place

contemplated creates such a nuisance, so affecting the homes of these defendants, this would bring the case within the exception contained in section 1714, withdrawing dwellings from the effect of the statute, and the power to condemn would no longer exist. While no such issue was presented in the pleadings before the clerk, it is raised now by defendants, and being an issue in bar of plaintiff's right to proceed, and on the facts as presented, it was within the sound discretion of his Honor to have the same passed on by a jury before proceeding further, a course approved and substantially pursued in *Clark v. Lawrence,* 59 N. C., 83.

Undoubtedly the Legislature could confer the power to condemn property for a public purpose, even to the extent of taking a man's home, for all private property is liable to be appropriated for the public use in the reasonable exercise of the police power. *Thomas v. Sanderlin,* 173 N. C., 329, citing 6 R. C. L., 193. And in no event should a public need of this kind be lightly stayed, but if it should be clearly established on an appropriate issue that the maintenance of a cemetery on the proposed site will create a nuisance, causing substantial damage to the homes of these defendants, then the plaintiff must fail in its petition, for in such case, as stated, the power to condemn the site has not been conferred.

His Honor, therefore, was well within his legal discretion in directing that this vital question should be predetermined by the jury.

Affirmed.