69 S.E.2d 525 (1952)
235 N.C. 259
TOWN OF MOUNT OLIVE
v.
COWAN et ux.
No. 234.
Supreme Court of North Carolina.
March 19, 1952.
*526 Paul B. Edmundson, James N. Smith, Goldsboro, and J. Melville Broughton, Raleigh, for respondents, appellants.
Dees & Dees, Goldsboro, Charles O. Whitley and Julian T. Flythe, Mount Olive, for petitioner, appellee.
DENNY, Justice.
The charter of the Town of Mount Olive contains no provision authorizing it to condemn land for street purposes. Hence, the petitioner brought this proceeding pursuant to the provisions of G.S. §§ 160-204 and 160-205 which authorize municipalities to condemn land for various purposes.
The question raised and presented for decision on this appeal is whether a municipality may condemn a dwelling house, yard, kitchen or garden, or any part thereof, for the purpose of widening or extending a street under the authority granted by the above statutes, or is such authority subject to the limitation contained in G.S. § 40-10?
The limitation contained in G.S. § 40-10 was enacted by the General Assembly of 1852, chapter 92, section 1, which was an act to define the duties and powers of turnpike and plankroad companies. It was codified in the Revised Code of 1855, chapter 61, section 21, and read as follows: "No such corporation shall be allowed to have condemned to its use, without the consent of the owner, his dwelling house, yard, kitchen, garden or burial ground." This exact language was carried forward in section 1701, chapter 38 in the Code of 1883. The provision later became a part of section 2578 of the Revisal of 1905, chapter 61.
The right to exercise the power of eminent domain, as set forth in General Statutes, chapter 40, article 1, sections 1 through *527 10, was given to certain corporations, as defined therein, for the purpose of enabling them to construct the works or projects enumerated in the article and which involve a public use or benefit, among them being as follows:
"1. Railroads, street railroads, plankroad, tramroad, turnpike, canal, pipe lines originating in North Carolina for the transportation of petroleum products, telegraph, telephone, electric power or lighting, public water supply, flume, or incorporated bridge companies.
"2. Municipalities operating water systems and sewer systems and all water companies operating under charter from the State or license from municipalities, which may maintain public water supplies, for the purpose of acquiring and maintaining such supplies."
The right to exercise the power of eminent domain belongs to every independent government exercising sovereign power as a necessary incident to its sovereignty. And this power, unless otherwise provided in the organic law, rests solely in the state unless by legislative action the power is delegated and the purposes for which it may be exercised enumerated and the procedure for such exercise prescribed. The right to exercise the power of eminent domain, however, is always subject to the principle that there must be definite and adequate provision made for reasonable compensation to the owner of the property proposed to be taken. Jeffress v. Greenville, 154 N.C. 490, 70 S.E. 919; Durham v. Rigsbee, 141 N.C. 128, 53 S.E. 531; Morganton v. Hutton, 187 N.C. 736, 122 S.E. 842; 18 Am. Jur., Eminent Domain, section 19, page 645, and section 304, page 949; 29 C.J.S., Eminent Domain, § 2, p. 777 et seq., and § 100, p. 904.
Therefore, a municipal corporation, being a creature of the Legislature, can only exercise the right of eminent domain when authorized to do so by its charter or by the general law. Lloyd v. Venable, 168 N.C. 531, 84 S.E. 855; In re Assessment against Property of Southern R. Co. for Paving on Railroad Street, Kernersville, N.C., 196 N.C. 756, 147 S.E. 301. Consequently, until 1917 it was a general practice to grant to towns and cities, in their charters, the right to exercise the power of eminent domain in order to obtain property for the construction or widening of streets, and for various other purposes. Long v. Town of Rockingham, 187 N.C. 199, 121 S.E. 461; Lee v. Town of Waynesville, 184 N.C. 565, 115 S.E. 51; Jeffress v. Greenville, supra; Rosenthal v. Goldsboro, 149 N.C. 128, 62 S.E. 905, 20 L.R.A.,N.S., 809. Finally, the General Assembly, by the enactment of chapter 136, Public Laws of 1917, sub-ch. 4, § 1, codified as C.S. §§ 2791 and 2792 (now G.S. §§ 160-204 and 205), gave this right to all cities and towns. City of Raleigh v. Hatcher, 220 N.C. 613, 18 S.E.2d 207; City of Charlotte v. Heath, 226 N.C. 750, 40 S.E.2d 600, 169 A.L.R. 569. See also Winston-Salem v. Ashby, 194 N.C. 388, 139 S.E. 764. Likewise, other acts have been passed by the General Assembly giving various public agencies and public utility companies more comprehensive power to condemn land than those granted in chapter 40, article 1, of our General Statutes.
The "Revision Commission" appointed pursuant to the provisions of chapter 252 of the Public Laws of 1917, for the purpose of "the compiling, collating, and revising of the public statutes of the State of North Carolina", in its report to the General Assembly, having codified various statutes giving to certain corporations the power to condemn land for purposes not included in section 2575 of the Revisal of 1905, chapter 61, among them being sub-ch. 4, section 1, of chapter 136 of the Public Laws of 1917, as sections 162 and 163, ch. 56, art. 16 Municipal Corporations, in such report, added to section 2578 of the Revisal of 1905, the following provision, "unless condemnation of such property is expressly authorized." The section was further amended, it appears, after the report of the Revision Commission was received by the General Assembly, since it was codified as section 1714 in the Consolidated Statutes of 1919, and contains the following language: "No such corporation shall be allowed to have condemned to its use, without the consent of the owner, his dwelling-house, yard, kitchen, *528 garden or burial ground, unless condemnation of such property is expressly authorized in its charter or by some provision of the Consolidated Statutes." This section is now codified as G.S. § 40-10. And sections 162 and 163 in the report of the Revision Commission, referred to above, were codified as sections 2791 and 2792 of the Consolidated Statutes, and brought forward in G.S. §§ 160-204 and 205.
G.S. § 160-204 authorizes the governing body of any city, or any board, commission, or department of the government of such city having the management and control of the streets, parks, playgrounds, electric lights, gas, power, sewerage or drainage systems, or other public utilities, to purchase such land, either within or without the city, when in the opinion of the governing body of the city, or other board, commission, or department of the government of such city having control of its streets, or other utilities, such purchase "shall be necessary for the purpose of opening, establishing, building, widening, extending, enlarging, maintaining, or operating any such streets, parks, playgrounds," or other public utilities, and to pay such compensation therefor as may be agreed upon.
G.S. § 160-205 provides: "If such governing body, board, commission or department of the government of such city are unable to agree with the owners thereof for the purchase of such land, right of way, privilege, or easement, for the purposes mentioned in the preceding section, or for a site for city hall purposes, condemnation of the same for such public use may be made in the same manner and under the same procedure as is provided in chapter Eminent Domain, article 2; and the determination of the governing body, board, commission, or department of government of such city of the land necessary for such purposes shall be conclusive."
In the case of Selma v. Nobles, 183 N.C. 322, 111 S.E. 543, the Town of Selma undertook to condemn certain property for cemetery purposes. The area sought to be condemned belonged to one of the defendants. The other defendants owned and occupied residences near the area sought to be condemned. No water was available to these defendants for domestic use and consumption except from wells on their respective premises. It was contended that the location of a cemetery in this particular area would constitute a nuisance, so affecting the homes of the defendants as to bring the case within the exceptions contained in C.S. § 1714 (now G.S. § 40-10).
The town of Selma had obtained an amendment to its charter by chapter 116, Private Laws of 1915, giving it the power to condemn land for the purposes of a cemetery, in the same manner "as lands are condemned by railroad and public utility companies". This Court held that since railroads and public utility companies were subject to the limitation contained in C.S. § 1714 (now G.S. § 40-10), so was the Town of Selma. However, the Court said [183 N.C. 322, 111 S.E. 543]: "Undoubtedly the Legislature could confer the power to condemn property for a public purpose even to the extent of taking a man's home, for all private property is liable to be approriated for the public use in the reasonable exercise of the police power. Thomas v. Sanderlin, 173 N.C. 329, 91 S.E. 1028, citing 6 R.C.L. p. 193." Jeffress v. Greenville, supra.
In Lee v. Town of Waynesville, supra, the plaintiff undertook to restrain the defendant from condemning a portion of plaintiff's yard for street purposes. The plaintiff and her husband had erected a large and expensive residence on the premises approximately thirty years prior thereto and were occupying it as their home at the time of the institution of the action. This Court held that the provisions contained in the charter of the defendant, Private Laws 1885, ch. 127, § 16; Public-Local Laws, Extra Session 1921, ch. 28, § 3; C.S. §§ 2791 and 2792 (now G.S. §§ 160-204 and 205), gave the Board of Aldermen of the Town of Waynesville ample authority to make the proposed street improvements and to condemn the needed portion of plaintiff's property for the purpose, on payment of reasonable and just compensation, citing Jeffress v. Greenville, supra, and Town of Waynesville v. Satterthwait, 136 N.C. 226, 48 S.E. 661.
*529 It will be noted that G.S. § 40-10 is a part of article 1, chapter 40 of our General Statutes which grants the right to exercise the power of eminent domain in connection with the construction of the projects enumerated in said article. Municipalities were not included among the corporations authorized to condemn land under the provisions of what is now chapter 40 of our General Statutes, article 1, until 1911. Chapter 62, section 25 of the Public Laws of 1911 reads in pertinent part as follows: "All municipalities operating water systems and sewer systems, * * * may acquire by condemnation such lands and rights in lands and water as are necessary for the successful operation and protection of their plants, said proceedings to be the same as prescribed by law for acquiring right of way by railroad companies." No such limitation on the right of a municipality to condemn land for the purposes enumerated in G.S. § 160-204, is included in G.S. § 160-205. Therefore, in our opinion the limitation contained in G.S. § 40-10 is a limitation only upon such corporations as are defined and named in the preceding sections in the article, when exercising the power of eminent domain granted in the act, or the amendments thereto, in connection with the construction of the works or projects enumerated therein, and pursuant to the authority granted thereby.
It would be illogical to assume that the General Assembly intended to place a limitation upon the power of a municipality to condemn land for street purposes when such municipality was not given the power to condemn land for such purposes in the original act, of which the limitation was a part, or by any amendment thereto. A municipality, at the present time, could not condemn land for street purposes under the substantive power granted in G.S. c. 40, article 1, sections 1 through 9, even if the limitation contained in G.S. § 40-10 had never been enacted. And the mere fact that the procedure outlined in chapter 40, article 2 of the General Statutes, sections 40-11 to 40-29, must be followed in condemning property for the purposes enumerated in G.S. § 160-204, does not impose upon the municipality the limitation contained in G.S. § 40-10. In re Housing Authority, 233 N.C. 649, 65 S.E.2d 761.
In our opinion, the power granted to a municipality to condemn land for street and other purposes by G.S. §§ 160-204 and 160-205, is not limited or restricted by G.S. § 40-10.
In view of the conclusion we have reached, the judgment of the court below is
Affirmed.