REDEVELOPMENT COMMISSION OF THE CITY OF WASHINGTON, NORTH CAROLINA v. BRYAN GRIMES AND WIFE, BOBBY H. GRIMES; AND JUNIUS D. GRIMES, JR. AND WIFE, LILY G. GRIMES

No. 48

(Filed 20 January 1971)

1. **Eminent Domain § 10; Municipal Corporations § 4— condemnation for urban redevelopment — duties of clerk — appointment of appraisers**

When the pleadings in a proceeding to condemn land for urban renewal present issuable matter, the cause is not transferred to the civil issue docket, but the clerk first passes on the questions presented after hearing evidence from all the parties; if the clerk decides in favor of petitioner, exceptions may be noted, and the clerk appoints commissioners to assess damages due the landowners.

2. **Eminent Domain § 11; Municipal Corporations § 4— condemnation for urban renewal — exceptions to commissioners' report — appeal to superior court**

In a proceeding to condemn land for urban renewal, it is only after the clerk of superior court confirms or fails to confirm the report of

Redevelopment Comm. v. Grimes

the commissioners that either party aggrieved by the ruling of the clerk may appeal, and such appeal carries the entire record up for review by the trial judge upon the questions of fact. G.S. 40-16; G.S. 40-17; G.S. 40-18; G.S. 40-19.

3. **Courts § 6— proceedings before clerk brought before superior court judge — jurisdiction of judge to hear all matters in controversy**

The clerk is but a part of the superior court, and when a proceeding before the clerk is brought before the superior court judge in any manner, the judge's jurisdiction is not derivative but he has jurisdiction to hear and determine all matters in controversy as if the case was originally before him; however, the superior court judge may in his discretion remand the cause to the clerk for further proceedings.

4. **Eminent Domain § 11; Courts § 6— premature appeal to superior court from commissioners' report — jurisdiction of judge of superior court**

Although a proceeding to condemn property for urban renewal was erroneously transferred from the clerk to the superior court before the clerk had acted on the exceptions to the commissioners' report, the judge of superior court had full power to consider and determine all matters in controversy as if the cause was originally before him.

5. **Eminent Domain § 9; Municipal Corporations § 4— sufficiency of petition to condemn land for urban renewal**

The trial court erred in dismissing an action to condemn land for urban renewal where there was no finding that the redevelopment commission failed to comply with the statutory procedures prerequisite to an exercise of the power of eminent domain by it, and there was no allegation, proof or finding that the redevelopment commission arbitrarily abused its discretion or acted in bad faith in selecting the area in question, the court's findings that the property of respondents does not lie within a blighted area as defined in G.S. 160-456(2) or within a nonresidential redevelopment area as defined in G.S. 160-456(10) being an insufficient basis for dismissal of the action.

6. **Municipal Corporations § 4— condemnation of land for urban renewal — absence of jurisdictional defect on face of record.**

In this proceeding to condemn land for urban renewal, no jurisdictional defect appears on the face of the record which requires the Supreme Court, *ex mero motu*, to dismiss the action.

7. **Eminent Domain § 9; Municipal Corporations § 4— sufficiency of petition to condemn land for urban renewal — new Rules of Civil Procedure**

Petition to condemn land for urban renewal, although not a model one, *held* sufficient under the new Rules of Civil Procedure to state a claim for relief, where it gives notice of the nature and basis of petitioners' claim and the type of case brought, and alleges generally the occurrence or performance of the conditions precedent required by Ch. 160, Art. 37 and Ch. 40, Art. 2. Rules of Civil Procedure Nos. 9(c) and 12(e).

ON writ of *certiorari* to North Carolina Court of Appeals to review its decision (8 N.C. App. 376, 174 S.E. 2d 839) remand-

ing the cause to the Clerk of Superior Court of BEAUFORT County for further proceedings.

Redevelopment Commission of the City of Washington, North Carolina, in a petition to condemn respondents' property for an urban redevelopment project, alleged, *inter alia*, the following:

Redevelopment Commission was duly created and had the power of eminent domain. Respondents were the owners of the property therein described, subject to liens and encumbrances shown on attached exhibit. The Planning Commission of the City of Washington had certified an area within the City to be a blighted redevelopment area, non-residential in character, as defined in G.S. 160-456 (10). Thereafter the Redevelopment Commission prepared an urban renewal plan, and after due notice the Redevelopment Commission held a public hearing on said urban renewal plan. After the hearing, the City of Washington Planning Board reaffirmed that the area qualified under the provisions of G.S. 160-457. The real property, as shown on the map attached to the petition as Exhibit D, is an integral part of the project, and it is necessary that the real property be taken in order to accomplish the urban renewal plan previously adopted. The Redevelopment Commission had attempted by good faith bargaining to acquire the various pieces of property platted and shown on the map attached as Exhibit D. Petitioner alleged finally that the Redevelopment Commission proposed to carry out said plan for urban renewal.

Respondents filed answers denying all the allegations of the petition except for allegations of ownership and location of the land sought to be condemned.

On 1 May 1969 the Clerk of Superior Court of Beaufort County entered an order appointing commissioners of appraisal pursuant to G.S. 40-11, *et seq.* Respondents objected and excepted to the signing and entry of the order.

On 28 July 1969, the Commissioners filed their report. Petitioner filed exceptions to the report in due time, and respondents also filed exceptions and gave "notice of appeal."

The cause was heard by Judge Joseph W. Parker at the 3 November 1969 session of Beaufort Superior Court, and judgment was entered dismissing the action. Petitioner appealed to

the North Carolina Court of Appeals. North Carolina Court of Appeals remanded the cause to the Clerk of Superior Court of Beaufort County on the ground that the appeal to the Judge of Superior Court was premature. Respondents' petition for writ of *certiorari* to the North Carolina Court of Appeals was granted by this Court on 28 August 1970.

*Mayo & Mayo, by William P. Mayo, and LeRoy Scott for plaintiff petitioner.*

*Wilkinson & Vosburgh, by John A. Wilkinson, for Bryan Grimes and wife, defendant respondents.*

*Carter & Ross, by W. B. Carter, for Junius D. Grimes, Jr. and wife, defendant respondents.*

BRANCH, Justice.

[1] The power of eminent domain is exercised by a redevelopment commission pursuant to G.S. Chapter 40, Article 2, and Chapter 160, Article 37. Therefore, when the pleadings present issuable matter, the cause is *not* transferred to the Civil Issue Docket, but the clerk first passes on the questions presented after hearing evidence from all parties. If the clerk decides that petitioners cannot proceed with condemnation, then the petitioner may except and appeal. However, if the clerk decides in favor of the petitioner, exceptions may be noted, and the clerk appoints commissioners to assess damages due the landowners. The Commissioners, after viewing the premises and after due notice, hear the evidence of all interested parties and thereafter file their report. Within twenty days after the filing of the report, the parties to the proceeding may file exceptions, and the clerk decides the exceptions after all parties have received due notice and have been afforded opportunity to be heard.

[2] It is only after the clerk of superior court confirms or fails to confirm the report of commissioners that either party aggrieved by the ruling of the clerk may appeal, and such appeal carries the entire record up for review by the trial judge upon the questions of fact. G.S. 40-16, 40-17, 40-18, 40-19; *Railroad v. Railroad*, 148 N.C. 59, 61 S.E. 683; *Selma v. Nobles*, 183 N.C. 322, 111 S.E. 543.

Applying the above principles, we agree with the conclusion of the Court of Appeals that the attempted appeal from "Report

of Commissioners" was premature. However, we do not agree with the action of the Court of Appeals in directing the Judge holding Superior Court of Beaufort County "to remand this matter to the Clerk of Superior Court of Beaufort County in order that he might proceed herein as provided by law." In this connection we quote pertinent statutes:

> G.S. 1-272: Appeal from clerk to judge.—Appeals lie to the judge of the superior court having jurisdiction, either in term time or vacation, from judgments of the clerk of the superior court in all matters of law or legal inference. In case of such transfer or appeal neither party need give an undertaking for costs; and the clerk shall transmit, on the transfer or appeal, to the superior court, or to the judge thereof, the pleadings, or other papers, on which the issues of fact or of law arise. An appeal must be taken within ten days after the entry of the order or judgment of the clerk upon due notice in writing to be served on the appellee and a copy of which shall be filed with the clerk of the superior court. But an appeal can only be taken by a party aggrieved, who appeared and moved for, or opposed, the order or judgment appealed from, or who, being entitled to be heard thereon, had no opportunity of being heard, which fact may be shown by affidavit or other proof.

> G.S. 1-276: Judge determines entire controversy; may recommit.—Whenever a civil action or special proceeding begun before the clerk of a superior court is for any ground whatever sent to the superior court before the judge, the judge has jurisdiction; and it is his duty upon the request of either party, to proceed to hear and determine all matters in controversy in such action, unless it appears to him that justice would be more cheaply and speedily administered by sending the action back to be proceeded in before the clerk, in which case he may do so.

[3] The clerk is but a part of the superior court, and when a proceeding before the clerk is brought before the judge in any manner, the superior court's jurisdiction is not derivative but it has jurisdiction to hear and determine all matters in controversy as if the case was originally before him. *Potts v. Howser,* 267 N.C. 484, 148 S.E. 2d 836; *McDaniel v. Leggett,* 224 N.C. 806, 32 S.E. 2d 602. However, the judge of superior court may in

his discretion remand the cause to the clerk for further proceedings. *York v. McCall,* 160 N.C. 276, 76 S.E. 84.

*Selma v. Nobles, supra,* is strikingly similar to instant case. There the court held that even when a proceeding is *erroneously* transferred to the superior court, and the judge takes "jurisdiction" pursuant to C.S. 637 (now G.S. 1-276), he may in his discretion make new parties, allow them to answer, and hold the case for jury determination before further proceedings are held.

[4] We conclude that in instant case the cause was erroneously transferred to the superior court; nevertheless, the judge of superior court had full power to consider and determine all matters in controversy as if the cause was originally before him.

[5] The crucial question is whether the judge of superior court correctly dismissed the action.

27 Am. Jur. 2d, Eminent Domain, Section 404, p. 284, contains the following:

NECESSITY AND EXPEDIENCY OF TAKING.—

It is ordinarily the rule that if the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the state may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment, or § 10 of Article 1, of the Federal Constitution. . . . While many courts have used sweeping expressions in the decisions in which they have disclaimed the power of supervising the selection of the site of public improvements, it may be safely said that the courts of the various states would feel bound to interfere to prevent an abuse of the discretion delegated by the legislature by an attempted appropriation of land in utter disregard of the possible necessity of its use, or when the alleged purpose is to cloak some sinister scheme.

In the case of *Board of Education v. Allen,* 243 N.C. 520, 91 S.E. 2d 180, the Alamance County Board of Education served notice as required by statute on respondents of its intention to appropriate land for public school use. Petition was filed with the clerk of superior court on the return date of the notice, and in accordance with G.S. 115-125, 1955 Supplement. Respond-

ents made a special appearance and moved to dismiss on the ground that they had not been properly made parties to the proceeding. The clerk denied the motion and respondents appealed to superior court. The judge of superior court affirmed the clerk's order and remanded for further proceedings before the clerk. The respondents appealed. The court, dismissing the appeal, stated:

> "The advisability of taking the property for public school use is a matter committed to the sound discretion of the petitioner with the exercise of which neither the respondents nor the courts can interfere. 'It is a political and administrative measure of which the defendants are not even entitled to notice or to be heard. (Authorities cited.), except as provided by statute. *Durham v. Rigsbee, supra; Selma v. Nobles,* 183 N.C. 322, 111 S.E. 543; *S. v. Jones,* 139 N.C. 613.

> "The action of the petitioner in selecting the site (not to exceed thirty acres) and in condemning the land so selected is not even subject to review by the courts except for arbitrary abuse of discretion or disregard of law. *Selma v. Nobles, supra; Pue v. Hood, Comr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896."

See Anno. 44 A.L.R. 2d 1414. At page 1437 of this Annotation we find the folowing:

> In determining whether a particular area may legally be selected for redevelopment, either under the terms of the statute, or in terms of the requirement that the particular project serve a "public use," the role of judicial review is severally limited by the rule that the finding of the redevelopment authority, or similar administrative agency, that a particular area is "blighted," that redevelopment serves a "public use," or the like, is not generally reviewable, unless fraudulent or capricious, or, in some instances, unless the evidence against the finding is overwhelming.

And at page 1439:

> It has been repeatedly held or stated that the fact that some of the lands in an area to be redeveloped under redevelopment laws are vacant lands or contain structures in themselves inoffensive or innocuous does not invalidate the taking of the property, or invalidate the statute so permit-

ting, according to the form of the contention in the particular case, usually on the ground that the action was justified as a necessary concomitant of area, as compared to structure-by-structure, rehabilitation.

The case of *Selma v. Nobles, supra,* is a proceeding in which a municipality sought to condemn lands for cemetery purposes. There, referring to the statutes granting the power of eminent domain, the Court said:

> "In construing this legislation, the Court has held that where the general power to condemn exists, the right of selection as to route, quantity, etc., is left largely to the discretion of the company or corporation, and does not become the subject of judicial inquiry except on allegations of fact tending to show bad faith on the part of the company or corporation or an oppressive and manifest abuse of the discretion conferred upon them by the law. *Power Co. v. Wissler,* 160 N.C. 269."

None of respondents' answers allege facts tending to show bad faith on the part of petitioner or an arbitrary abuse of the discretion granted to petitioner by statute. The answer of respondents Bryan Grimes and wife Bobby H. Grimes contains an allegation that the "Planning Commission of the City of Washington exceeded its authority in designating the Area." This conclusory statement concerning the action of the Planning Commission does not allege bad faith or such arbitrary abuse of discretion as will permit review by the court. Nevertheless, the trial court heard conflicting evidence on the question of whether the property in the area sought to be condemned—and more particularly the property of respondents—was of the character described in G.S. 160-456. The court, *inter alia,* found the following facts:

> The witnesses all agreed that it (Grimes property) was structurally sound and with repair was adequate for the purposes for which it was being used. The respondents testified that it had not been recently painted or minor repairs made for the reason that since about 1961 they had been advised that it would likely be acquired over their protest by the petitioner and that, consequently, they were reluctant to invest money in it that they might not be able to retrieve.

Redevelopment Comm. v. Grimes

Upon this evidence the court is of the opinion and finds as a fact that the building is ideally located for its use as a law office and that there is a shortage of presently available sites for use as law offices in the Town of Washington near the site of the existing courthouse and of the new courthouse which will be built soon. The court further finds as a fact and based upon the evidence that with painting and minor repair the building is adequate for such use and that such use may be the highest and best use for which it is suitable. The court further finds that the building is not blighted, dilapidated, poorly ventilated or unsanitary. On the contrary, it has adequate sanitary facilities, adequate ventilation and is safely constructed and that it does not constitute a detriment to the sound growth of the community but, on the other hand, it serves a useful purpose as a law office used by an old and established firm and is a landmark having been used by it and other firms for approximately half a century. That its continued use for such purpose is advantageous to the people of the community and the county.

. . . .

No evidence was presented upon the question of whether or not the respondents had failed in good faith to bargain for the acquisition of this property by the petitioner for the reason that the court was of the opinion that it needed first to determine the questions hereinbefore discussed before proceeding to the determination of the question of fact raised by the portion of the petition and reply dealing with the subject of bargaining.

Based upon the above findings of fact, the court holds as a matter of law that the petitioner has failed to establish that the individual tract sought to be condemned is of the character as described in Subsection Two or Subsection Ten of G.S. 150-457 [160-456] and does not substantially contribute to the conditions allegedly endangering the area.

Based upon the facts above, the court is of the opinion as a matter of law that the petitioner has failed to show that the property sought to be condemned lies within a blighted area as such area is described in G.S. 160-456, Subsection Two or is within a non-residential development area, which is subject to be condemned under the provisions set out in General Statutes 160-456, Subsection Ten. In conse-

quence the question of fact, is the property belonging to the respondents described in the petition within a blighted area or a non-residential area in such sense that it is subject to condemnation in this proceeding must be answered, no, and the court does hereby answer said question of fact, no.

[5]   Based on his findings of fact the trial judge dismissed the action. It is apparent from the findings of fact that the judgment was not founded on failure of petitioner to comply with the statutory procedures prerequisite to exercise of eminent domain. There was no finding of fact that the redevelopment commission arbitrarily abused its discretion or acted in bad faith in selecting the area; nor was there allegation or proof of facts sufficient to justify such a finding. Therefore, the facts found constitute no basis for dismissal of the action. *Selma v. Nobles, supra; Board of Education v. Allen, supra.*

[6]   The respondents have not contended that there should be a dismissal of this proceeding because of petitioner's failure to allege or prove that it had followed the statutory procedures prerequisite to the exercise of eminent domain by it. We find no jurisdictional defect on the face of the record which requires us, *ex mero motu,* to dismiss the action. *Thornton v. Brady,* 100 N.C. 38, 5 S.E. 910; *State v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311; *Redevelopment Commission v. Hagins,* 258 N.C. 220, 128 S.E. 2d 391.

The case of *Redevelopment Commission v. Hagins, supra,* holds that a redevelopment commission must exercise the power of eminent domain pursuant to Chapter 160, Article 37, and Chapter 40, Article 2, and that in order to invoke this power the redevelopment commission must affirmatively allege compliance with the statutory requirements.

G.S. 160-463, in part, provides:

(g) Upon receipt of the planning commission's recommendation, or at the expiration of forty-five days, if no recommendation is made by the planning commission, the commission shall submit to the governing body the redevelopment plan with the recommendation, if any, of the planning commission thereon. . . .

(h) The governing body, upon receipt of the redevelopment plan and the recommendation (if any) of the planning

commission, shall hold a public hearing upon said plan. Notice of such hearing shall be given once a week for two successive weeks in a newspaper published in the municipality, or, if there be no newspaper published in the municipality, by posting such notice at four public places in the municipality, said notice to be published the first time or posted not less than fifteen days prior to the date fixed for said hearing. The notice shall describe the redevelopment area by boundaries, in a manner designed to be understandable by the general public. The redevelopment plan, including such maps, plans, contracts, or other documents as form a part of it, together with the recommendation (if any) of the planning commission and supporting data, shall be available for public inspection at a location specified in the notice for at least ten days prior to the hearing.

At the hearing the governing body shall afford an opportunity to all persons or agencies interested to be heard and shall receive, make known, and consider recommendations in writing with reference to the redevelopment plan.

(i) The governing body shall approve, amend, or reject the redevelopment plan as submitted.

Since decision in *Hagins* the legislature by Session Laws of 1965, c. 679, s. 3; c. 1132; 1967, c. 932, ss. 2, 3, rewrote G.S. 160-465. However, we do not deem it necessary to discuss the amendments since we conclude that the changes do not affect the holding in *Hagins*.

[7] The petitioner in instant case has alleged with particularity the essential requirements of G.S. 40-12. Its only attempt to allege compliance with subsections (g), (h) and (i) of G.S. 160-463 is by the following allegation: "That the petitioner is now exercising the powers of eminent domain granted to it pursuant to Chapter 160 and is proceeding pursuant to the provisions of Chapter 40 in the exercise of such powers of eminent domain and has met all requirements thereunder."

The rules of civil procedure became effective 1 January 1970, and apply to "all actions and proceedings pending on that date as well as to actions and proceedings commenced on and after that date." N. C. Sess. L. ch. 803 (1969).

In the case of *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161, this Court considered the action of Hubbard, J., in sustaining a demurrer and dismissing the action on the ground that the complaint failed to state a cause of action. The Court of Appeals by its opinion filed 31 December 1969 reversed the trial judge, and this Court allowed *certiorari* on 28 August 1970. In affirming the opinion of the Court of Appeals, this Court applied the North Carolina Rules of Civil Procedure and treated the demurrer as a motion to dismiss under Rule 12(b)(6) and, *inter alia,* stated:

> "By repealing G.S. 1-122, which required a complaint to state 'the facts constituting a cause of action,' and substituting in lieu thereof the requirement that a 'claim for relief' shall be stated with sufficient particularity to give *notice* of the events intended to be proved showing that the pleader is entitled to relief, the legislature obviously intended to change our prior law. We do not assume its choice of 'new semantics' was either accidental or casual. Considering the inspiration, origin, and legislative history of the NCRCP and the absence from it of the words 'facts' and the phrase 'facts constituting a cause of action' we conclude that the legislature intended to relax somewhat the strict requirements of detailed *fact* pleading and to adopt the concept of 'notice pleading.' . . .
>
> . . . .
>
> "Under the 'notice theory of pleading' a statement of claim is adequate if it gives sufficient notice of the claim asserted, 'to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought . . . . ' Moore § 8.13. 'Mere vagueness or lack of detail is not ground for a motion to dismiss.' Such a deficiency 'should be attacked by a motion for a more definite statement.' Moore § 12.08 and cases cited therein.

Rule 9(c) states: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

[7] Although this petition is not a model, it appears to give notice of the nature and basis of petitioner's claim, the type of

the case brought, and generally to allege the occurrence or performance of the conditions precedent required by Ch. 160, Art. 37, and Ch. 40, Art. 2. Respondents' denials were general and lacked particularity and specifity. If respondents desire, they may move for a more definite statement. Rule 12(e).

The rights of the parties can be fully preserved with economy and dispatch by remanding this cause to the superior court of Beaufort County to the end that the judge holding courts may allow such amendments to the pleadings as he may deem proper, hear evidence, and enter judgment consistent with this opinion, or in his discretion remand to the Clerk of Superior Court of Beaufort County for like action.

This cause is remanded to the Court of Appeals with direction that it be remanded to the Superior Court of Beaufort County for further proceedings consistent with this opinion and existing law.

Error and Remanded.