REDEVELOPMENT COMM'N OF GREENSBORO v. AGAPION

[129 N.C. App. 346 (1998)]

REDEVELOPMENT COMMISSION OF GREENSBORO, Plaintiff v. WILLIAM S. AGAPION; and Wife, SOPHIA S. AGAPION; CITY OF GREENSBORO; and COUNTY of GUILFORD, Defendants

No. COA97-405

(Filed 30 April 1998)

**1. Municipal Corporations § 195 (NCI4th)— urban redevelopment—public purpose—appellate review**

The appellate court will not review the trial court's conclusion that a redevelopment commission acted for a public purpose in condemning defendants' property where defendants failed to meet their burden of showing that the commission acted arbitrarily or capriciously.

**2. Municipal Corporations § 209 (NCI4th)— urban redevelopment—condemnation—de novo review**

The trial court is authorized by N.C.G.S. § 40A-47 to conduct a *de novo* review of a redevelopment commission's decision to condemn land for urban redevelopment.

**3. Municipal Corporations § 196 (NCI4th)— urban redevelopment—blighted property—date of evidence considered**

In its review of a redevelopment commission's determination that a property is blighted, the trial court should consider evidence relating to the condition of the condemned property at the time the redevelopment commission's plan is approved by the city council rather than on the date of the filing of the condemnation complaint.

Appeal by defendants William S. Agapion and Sophia S. Agapion and plaintiff Redevelopment Commission of Greensboro from order entered 4 December 1996 by Judge Thomas W. Ross in Guilford County Superior Court. Heard in the Court of Appeals 8 January 1998.

*Coggin, Hoyle, Blackwood & Brannan, by W. Scott Brannan and L. James Blackwood, II, for plaintiff appellee.*

*Agapion & Agapion, by William S. Agapion, for defendant appellants.*

McGEE, Judge.

This appeal arises from a condemnation by the Redevelopment Commission of Greensboro of residential rental property located in the Rosewood section in the northeast area of downtown Greensboro, North Carolina. The condemnation included defendants' nine rental houses which are divided into duplexes for a total of eighteen rental units.

In June 1992 staff members from the City of Greensboro's Department of Housing and Community Development were invited to a meeting of Rosewood residents to discuss problems with break-ins into boarded-up homes, trash, and the general decline of the neighborhood. The Redevelopment Commission of Greensboro selected Rosewood as a Community Development Target Area in July 1993. This classification makes an area eligible for federal funding for renovation and acquisition of deteriorated housing units. When an area is so classified, a redevelopment plan must then be prepared by the local redevelopment commission in accordance with the Urban Redevelopment Law, N.C. Gen. Stat. § 160A-500, *et seq.* (1994). A public hearing must be held prior to the commission's final determination of the plan. N.C.G.S. § 160A-513(e).

The plan is then submitted to the local planning commission for review. N.C.G.S. § 160A-513(f). The planning commission may either approve, reject, or modify the plan. Within forty-five days the planning commission must "certify to the redevelopment commission its recommendation on the redevelopment plan[.]" *Id.* The plan is then submitted with any recommendations to the city council which must also hold a public hearing to allow public discussion of the plan. Notice to the public must be given of the meeting, and the notice must describe the plan "in a manner designed to be understandable by the general public." N.C.G.S. § 160A-513 (g) & (h).

> At the hearing the governing body shall afford an opportunity to all persons or agencies interested to be heard and shall receive, make known, and consider recommendations in writing with reference to the redevelopment plan.
>
> (i) The governing body shall approve, amend, or reject the redevelopment plan as submitted.
>
> (j) Subject to the proviso in subsection (c) of this section, upon approval by the governing body of the redevelopment plan, the commission is authorized to acquire property, to execute con-

tracts for clearance and preparation of the land for resale, and to take other actions necessary to carry out the plan, in accordance with the provisions of this Article.

N.C.G.S. § 160A-513 (h),(i)& (j).

Pursuant to the Urban Redevelopment Law, the Greensboro Planning Board certified on 19 January 1994 that Rosewood was an area in danger of becoming a blighted area in the reasonably foreseeable future. A redevelopment plan for the area was prepared by plaintiff. On 6 June 1994 the Greensboro City Council approved the redevelopment plan, which included thirty-nine tracts of land to be acquired by plaintiff, nine of which are owned by defendants.

Plaintiff filed a complaint for condemnation against defendants on 17 October 1995 asserting that the properties sought to be condemned lie "within the redevelopment area and [are] an integral part of the overall plan of redevelopment of the 'Rosewood Redevelopment Area' " and that "it is necessary to acquire said real estate . . . to accomplish the objective of clearance, rehabilitation and/or redevelopment of the 'Rosewood Neighborhood Area' Redevelopment Plan." Defendants filed an answer denying that it was necessary for plaintiff to acquire defendants' properties as part of the redevelopment plan.

The trial court held a hearing on 7 October 1996 and entered an order on 4 December 1996 concluding as a matter of law that:

1. In order to determine if the taking of the real property is for a public purpose, this Court must determine that the real property is blighted as that term is defined in North Carolina General Statute § 160A-503(2) as [of] the date of the taking, that being October 17, 1995, the date of the filing of the complaint. This determination by the Court is independent of the determination of the plaintiff on this question, the scope of review on this issue being that of a trial de novo.

2. On the date of taking, October 17, 1995, with the exception of 1319/1321 Meadow Street (Lot 10), the real property was blighted by reason of its dilapidation, deterioration and its lack of ventilation being detrimental to the public health, safety and welfare. By reason thereof, the taking of the said real property, with the exception of 1319/1321 Meadow Street (Lot 10), is for a public purpose.

3. The plaintiff has failed to meet its burden of proof that on the date of taking, October 17, 1995, 1319/1321 Meadow Street (Lot 10) was blighted. This determination does not prejudice the right of the plaintiff to seek to acquire this property by condemnation at a later date in a separate action should the property become blighted in the future.

4. With the exception of 1319/1321 Meadow Street (Lot 10), the [Commission] has the authority to condemn the real property hereinabove described.

The trial court then ordered that "with the exception of 1319/1321 Meadow Street (Lot 10), fee simple, marketable title to the property . . . and the right to possession shall vest in the plaintiff[.]"

Defendants appeal the condemnation of these eight properties. Plaintiff cross-appeals the trial court's ruling that plaintiff was not entitled to also condemn 1319/1321 Meadow Street (Lot 10).

I.

[1] The threshold issue is whether the trial court erred in concluding that plaintiff acted for a public purpose in condemning defendants' property. *See Redevelopment Commission v. Bank*, 252 N.C. 595, 114 S.E.2d 688 (1960). Our Supreme Court in *Redevelopment Comm. v. Grimes*, 277 N.C. 634, 640, 178 S.E.2d 345, 348-49 (1971), *quoting* Anno. 44 A.L.R. 2d 1414 at page 1437, stated that the "finding of the redevelopment authority . . . that a particular area is 'blighted,' [or] that redevelopment serves a 'public use,' . . . is not generally reviewable, unless fraudulent or capricious, or, in some instances, unless the evidence against the finding is overwhelming." The *Grimes* Court further said "[i]t has been repeatedly held or stated that the fact that some of the lands in an area to be redeveloped under redevelopment laws are vacant lands or contain structures in themselves inoffensive or innocuous does not invalidate the taking of the property[.]" *Id.* at 640, 178 S.E.2d at 349.

In this case, defendants did not allege in their answer that plaintiff acted arbitrarily or in bad faith. Defendants also failed to include in the record the transcript of the 7 October 1996 hearing where they argue in their brief to this Court that they alleged plaintiff acted in an arbitrary and capricious manner in discriminating against the occupants of defendants' units who were "people of Vietnamese descent." Therefore, there is no evidence in the record before this Court that minority individuals were even living in defendants' properties at the

time the plan was approved. As defendants have thus not met their burden of showing either arbitrary or capricious conduct by plaintiff, we do not further review whether the taking was for a public purpose and dismiss this argument of defendant. *Grimes*, 277 N.C. at 640, 178 S.E.2d at 348-49.

## II.

**[2]** We next address plaintiff's arguments that the trial court erred by conducting a de novo review of the condemnation decision by the Greensboro City Council and that the trial court "should have limited its review to a determination of whether the statutory prerequisites had been followed by the [Commission] in making its decision to condemn and whether such decision was supportable by any evidence." We disagree.

Pursuant to N.C. Gen. Stat. § 40A-47 (1984) (emphasis added), the statute governing the condemnation procedure, the trial court

upon motion and 10 days' notice by either the condemnor or the owner, shall, either in or out of session, *hear and determine any and all issues raised by the pleadings* other than the issue of compensation, including, but not limited to, the condemnor's authority to take, questions of necessary and proper parties, title to the land, interest taken, and area taken.

We hold that this statute authorizes the trial court to conduct a de novo review of the decision to condemn. Thus the trial court was correct in its application of the de novo standard of review.

## III.

**[3]** The next issue is at what specific time evidence of the condition of the condemned property should be considered by the trial court in determining if the property was blighted. Defendants argue that (1) the trial court erred by admitting evidence of the condition of the property more than eighteen months before and ten months after the date of taking in concluding that the property was blighted; and plaintiff argues that (2) the trial court erred by considering evidence as to whether the property was blighted on the date the complaint was filed on 17 October 1995.

The policy of this state, as set forth in the Urban Development Law, is to:

protect and promote the health, safety, and welfare of the inhabitants of its urban areas by authorizing redevelopment commis-

sions to undertake nonresidential redevelopment in accord with sound and approved plans and to undertake the rehabilitation, conservation, and reconditioning of areas where, in the absence of such action, there is a clear and present danger that the area will become blighted.

N.C. Gen. Stat. § 160A-502 (1994).

A redevelopment commission may only condemn property if it is: (1) located within a blighted area, and (2) "substantially contributes to the conditions endangering the area[.]" N.C. Gen. Stat. § 160A-503(21) (1994). The statute defines "blighted area" as:

an area in which there is a predominance of buildings or improvements (or which is predominantly residential in character), and which, by reason of dilapidation, deterioration, age or obsolescence, inadequate provision for ventilation, light, air, sanitation, or open spaces, high density of population and overcrowding, unsanitary or unsafe conditions, or the existence of conditions which endanger life or property by fire and other causes, or any combination of such factors, substantially impairs the sound growth of the community, is conducive to ill health, transmission of disease, infant mortality, juvenile delinquency and crime, and is detrimental to the public health, safety, morals or welfare; provided, no area shall be considered a blighted area nor subject to the power of eminent domain, within the meaning of this Article, unless it is determined by the planning commission that at least two thirds of the number of buildings within the area are of the character described in this subdivision and substantially contribute to the conditions making such a blighted area . . . .

N.C. Gen. Stat. § 160A-503(2) (1994).

Defendants argue that plaintiff has the authority to condemn an individual property only if it is "blighted" on the date of taking. They further argue that because the trial court did not admit evidence specifically related to the condition of the property on 17 October 1995, the date of the filing of the condemnation action, it erred by entering the order condemning the property. We disagree.

Our role in interpreting a statute "is to ensure [the] accomplishment of legislative intent." *Dare County Bd. of Educ. v. Sakaria*, 127 N.C. App. 585, 588, 492 S.E.2d 369, 371 (1997) (citations omitted) (interpreting N.C. Gen. Stat. § 40A-53 (1984). "To achieve this end, the

court should consider 'the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.' " *Id.* (citations omitted). In this case, the Act seeks to accomplish a long-term goal of community renewal and redevelopment. Rather than limiting a redevelopment commission's focus to individual housing, the Act empowers a commission to take large-scale actions in an entire neighborhood if "there is a predominance of buildings or improvements (or which is predominantly residential in character), and which, by reason of dilapidation, deterioration, age or obsolescence" which "substantially impairs the sound growth of the community." N.C.G.S. § 160A-503(2).

To accomplish these goals, the authority of the redevelopment commission necessarily is both *derived from* and *created by* the adoption of the redevelopment plan. *Redevelopment Commission v. Hagins*, 258 N.C. 220, 224, 128 S.E.2d 391, 394 (1962) ("The adoption of the plan is equivalent to a cease and desist order preventing any development, rental, or sale of the property within the area."). Thus, whether plaintiff is acting within its authority to condemn a specific property is dependent upon factors primarily existing at the time of the city council's approval of the plan. Otherwise, one property owner's renovation of property prior to the actual condemnation, but after the plan's approval, could thwart a redevelopment commission's extensive plans for the entire community.

We agree with plaintiff's argument that the trial court erred by concluding it should consider evidence relevant to the condition of the property on the date of the filing of the condemnation complaint. We hold that in its review of a redevelopment commission's determination that a property is blighted, the trial court should consider evidence relating to the condition of the condemned property at the time the redevelopment commission's plan is approved by the city council.

No findings were made by the trial court as to the condition of defendants' properties at the time the redevelopment plan was approved by the Greensboro City Council. Therefore, we remand this action to the trial court to make such findings. On remand, if the trial court finds that an individual property of defendants was (1) located within a blighted area, and (2) "substantially contribute[d] to the conditions endangering the area" within the meaning of N.C. Gen. Stat. § 160A-503(21) at the time the redevelopment plan was approved by the Greensboro City Council on 6 June 1994, it should enter an order to condemn that property.

Reversed and remanded.

Judges LEWIS and TIMMONS-GOODSON concur.